836 F.2d 750
 1988 A.M.C. 1674
 In the Matter of the Complaint of DAMMERS & VANDERHEIDE &
SCHEEPVAART MAATS CHRISTINA B.V., Petitioners, as
Owners of the M/V CHRISTINA for
Exoneration From or Limitation
of Liability.
DAMMERS & VANDERHEIDE & SCHEEPVAART MAATS CHRISTINA B.V.,
Petitioners- Appellants,
v.
Fran CORONA and Ana Corona, Respondents-Appellees.
 No. 292, Docket 87-7396.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 28, 1987.
Decided Jan. 6, 1988.
 
 Philip S. LaPenta, New York City (Gulmi & LaPenta, New York City, of counsel), for petitioners-appellants.
 Jorden Pederson, Brooklyn, N.Y. (George J. Duffy, Brooklyn, N.Y., of counsel), for respondents-appellees.
 Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 In this appeal, petitioners-appellants Dammers & Vanderheide and Scheepvaart Maats Christina B.V., two Dutch corporations, challenge an order of the United States District Court for the Southern District of New York, Ward, J., that vacated portions of its earlier stay and allowed respondents-appellees Fran and Ana Corona to proceed with a state court tort action against the appellants. The tort action was instituted after Fran Corona was injured while working as a longshoreman aboard the M.V. CHRISTINA, a vessel owned and operated by the appellants.[1] The appellants thereafter petitioned the district court for exoneration from or limitation of liability pursuant to the Limitation of Shipowners' Liability Act (Act), 46 U.S.C. Sec. 181 et seq. (1982). In accordance with the provisions of the Act, the district court enjoined the Coronas from pursuing their state court action. However, after the Coronas filed a stipulation conceding certain rights of the appellants and recognizing certain aspects of the district court's jurisdiction over the matter, the district court vacated that portion of its earlier order that had restrained the appellees' state litigation. See In re Dammers & Vanderheide, 660 F.Supp. 153 (S.D.N.Y.1987). It is from this decision that appellants now appeal to this Court. We affirm.
 
 BACKGROUND
 
 2
 On June 18, 1984, Fran Corona was working as a stevedore aboard the CHRISTINA while the vessel was being unloaded at a pier in New York City's East River. During the unloading operation, a wire rope on one of the CHRISTINA's deck cranes snapped and a hatch cover fell on top of Corona. He suffered injuries that ultimately resulted in the amputation of an arm and a leg.
 
 
 3
 Fran Corona and his wife, Ana, subsequently initiated a lawsuit against the appellants in the New York Supreme Court for New York County. Fran Corona sought $25 million for his injuries and his wife sought $10 million for loss of consortium. Appellants then instituted this action in the United States District Court for the Southern District of New York seeking exoneration from or limitation of liability pursuant to the terms of the Act. The Act provides that the liability of a shipowner incurred as a result of a maritime accident "without the privity or knowledge of such owner ... shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C. Sec. 183(a). To secure the protection of the Act, a shipowner must file with the district court security equal to the value of its interest in the ship and its cargo. See 46 U.S.C. Sec. 185; Fed.R.Civ.P. Supplemental Rule F(1)-(2). The appellants complied with this requirement and the district court approved appellants' offer of security and their stipulation of approximately $7.6 million as the value of the CHRISTINA and her cargo.[2] Then, pursuant to 46 U.S.C. Sec. 185 and Fed.R.Civ.P. Supplemental Rule F(3), Judge Ward enjoined the prosecution of any pending or future suits arising out of this accident against the shipowners in other forums, pending the resolution of the limitation of liability proceeding.
 
 
 4
 In the meantime, the Coronas had instituted other state court actions against the CHRISTINA's builder, charterer and architect, and against the companies that manufactured and inspected the vessel's deck cranes.[3] The appellees also initiated efforts to have the district court vacate its order restraining their suit against the appellants. After two unsuccessful attempts, the Coronas filed with the court a third amended stipulation. Relevant portions of that stipulation provide as follows:
 
 
 5
 (4) Claimant, Fran Corona, and Ana Corona, his wife, hereby agree and concede that Plaintiffs Dammers & Vanderheide and Scheepvaat Maats Christina B.V., are entitled to and have the right to litigate all issues relating to limitation of liability pursuant to the provisions of 46 U.S.C. Sec. 183(a) in this Court.
 
 
 6
 5) Claimant, Fran Corona and Ana Corona, his wife, will not seek in the action pending in the Supreme Court, State of New York in which a jury trial has been demanded, any judgment or ruling on the issue of plaintiffs' right to Limitation of Liability; and hereby consents [sic] to waive any claim of res judicata relevant to the issue of Limitation of Liability based on any judgment which may be recovered in said State Court Action.
 
 
 7
 6) Claimant Fran Corona, and Ana Corona, his wife, hereby stipulate that in the event there is a judgment or recovery in the State Court action in excess of SEVEN MILLION SIX HUNDRED SEVENTY-ONE THOUSAND ($7,671,000.00) DOLLARS whether against the plaintiffs, or any other liable parties who may cross-claim or claim over against the plaintiffs, in no event will claimant Fran Corona, and Ana Corona, his wife seek to enforce said excess judgment or recovery insofar as same may expose plaintiffs to liability in excess of SEVEN MILLION SIX HUNDRED SEVENTY-ONE THOUSAND ($7,671,000.00) DOLLARS pending the adjudication of Limitation of Liability in this Court.
 
 
 8
 7) Claimant's wife, Ana Corona, hereby stipulates and agrees that the claim of Fran Corona will have irrevocable priority to her per quod claim.
 
 
 9
 8) The claimant, Fran Corona, and his wife, Ana Corona, stipulate and agree that if the plaintiffs, Dammers & Vanderheide and Scheepvaat Maats Christina B.V., are held to be responsible for attorneys['] fees and costs which may be assessed against them by a co-liable defendant or party seeking indeminification [sic] for attorney fees and costs then such claims shall have priority over the claim for Fran Corona and his wife, Ana Corona.
 
 
 10
 Third Amended Stipulation at paragraphs 4-8.
 
 
 11
 Judge Ward concluded that the appellees' third amended stipulation was sufficient to protect the right of the shipowners to seek limited liability under federal law and he therefore vacated his earlier order insofar as it had enjoined the Coronas' prosecution of their state court action against appellants. Otherwise, the district court retained jurisdiction over the entire matter and "continue[d] the stay against entry of judgment and consequent enforcement of any recovery achieved in [the state court] proceeding pending the outcome of this limitation proceeding." 660 F.Supp. at 160. We must now consider whether the district court was correct and whether the safeguards embodied in the appellees' third amended stipulation and the district court's decision sufficiently protect the shipowners in accordance with the Act.
 
 DISCUSSION
 I.
 
 12
 This case forces us to confront a recurring and inherent conflict in admiralty law: the apparently exclusive jurisdiction vested in admiralty courts by the Limitation of Liability Act versus the presumption in favor of jury trials and common law remedies embodied in the "saving to suitors" clause of 28 U.S.C. Sec. 1333 (1982).[4] Attempts to resolve this tension "ha[ve] been troublesome for the courts." Jefferson Barracks Marine Service, Inc. v. Casey, 763 F.2d 1007, 1009 (8th Cir.1985). But, as two noted admiralty authorities have pointed out, those courts should not necessarily be faulted, as they have been asked "to implement, at one and the same time, two inconsistent and contradictory policies." G. Gilmore & C. Black, The Law of Admiralty Sec. 10-18, at 864 (2d ed. 1975).
 
 
 13
 The original purpose of the Limitation of Liability Act was "to encourage the development of American merchant shipping." Lake Tankers Corp. v. Henn, 354 U.S. 147, 150, 77 S.Ct. 1269, 1271, 1 L.Ed.2d 1246 (1957). Specifically, "the Act is directed at misfortunes at sea where the losses incurred exceed the value of the vessel and the pending freight." Id. at 151, 77 S.Ct. at 1272. When a shipowner facing potential liability in such a case invokes the protection of the Act, the district court is empowered to "issue a restraining order or an injunction staying all other proceedings [against the shipowner arising out of the same mishap]." Helena Marine Service, Inc. v. Sioux City, 564 F.2d 15, 17 (8th Cir.1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978). See also S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co., 678 F.2d 636, 642 (6th Cir.1982); Fed.R.Civ.P. Supplemental Rule F(3). The district court also notifies all potential claimants to file their claims against the shipowner in the admiralty court within a specified time period. See Universal Towing Co. v. Barrale, 595 F.2d 414, 417 (8th Cir.1979); Fed.R.Civ.P. Supplemental Rule F(4).
 
 
 14
 Thereafter, in a proceeding known as a concursus, the district court, sitting in admiralty without a jury, determines "whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the [limitation] fund should be distributed." Universal Towing, 595 F.2d at 417. It is only in this way that the admiralty court can achieve the primary purpose of the Act--"to provide a marshalling of assets [and] the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." In re Moran Transportation Corp., 185 F.2d 386, 389 (2d Cir.1950), cert. denied, 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951). See also Lake Tankers, 354 U.S. at 151-52, 77 S.Ct. at 1272; Newton v. Shipman, 718 F.2d 959, 961 (9th Cir.1983) (per curiam); S & E Shipping, 678 F.2d at 642; Universal Towing, 595 F.2d at 417.
 
 
 15
 In exercising this equitable power, of course, the admiralty court must necessarily deny the claimants their right to pursue common law claims before a jury. There is no right to a jury in actions instituted in admiralty, see Waring v. Clarke, 46 U.S. (5 How.) 441, 458-60, 466, 12 L.Ed. 226 (1847); Newton v. Shipman, 718 F.2d at 962, and the claimants are enjoined from pursuing common law actions in other forums. Such a result is in direct conflict with the promise of 28 U.S.C. Sec. 1333 that the exercise of admiralty jurisdiction will not deny suitors their right to common law remedies. See generally G. Gilmore & C. Black, supra, Sec. 10-16, at 862.
 
 
 16
 In response to this conflict, and in an effort to carry out the intent of the "saving to suitors" clause, courts have identified two sets of circumstances in which the exclusive jurisdiction of the admiralty court must give way. First, if the limitation fund, which represents the value of the vessel and its cargo, exceeds the aggregate of the claims to be made against it, a concursus is unnecessary and the district court must allow claimants to proceed in other forums. See, e.g., Lake Tankers, 354 U.S. at 150-54, 77 S.Ct. at 1271-73; S & E Shipping, 678 F.2d at 643; Universal Towing, 595 F.2d at 418; In re Moran Transportation, 185 F.2d at 389 (citing Curtis Bay Towing Co. v. Tug Kevin Moran, 159 F.2d 273 (2d Cir.1947)). Second, when a lone claimant brings an action seeking an amount in excess of the limitation fund, the district court must lift the stay against other proceedings if that claimant concedes the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability. See, e.g., Ex parte Green, 286 U.S. 437, 438-40, 52 S.Ct. 602, 602-03, 76 L.Ed. 1212 (1932); Langnes v. Green, 282 U.S. 531, 540-44, 51 S.Ct. 243, 246-48, 75 L.Ed. 520 (1931); Jefferson Barracks Marine, 763 F.2d at 1010; Newton v. Shipman, 718 F.2d at 962-63; S & E Shipping, 678 F.2d at 643-44; In re Red Star Barge Line, Inc., 160 F.2d 436, 437-38 (2d Cir.), cert. denied, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed.2d 1859 (1947). The district court in this case lifted the stay on the Coronas' state court action pursuant to the second exception. We therefore must consider what constitutes a "lone claimant" under that exception and what concessions such a claimant must make in order to secure the right to pursue common law actions in forums outside of the admiralty court.II.
 
 
 17
 We first consider whether this case presents a "lone claimant" situation. It is generally acknowledged in admiralty cases that a claim for loss of consortium by one spouse is a separate and independent cause of action from the related tort claim of the other spouse. See, e.g., American Export Lines, Inc. v. Alvez, 446 U.S. 274, 284-86, 100 S.Ct. 1673, 1679-80, 64 L.Ed.2d 284 (1980) (recognizing such an independent cause of action under general maritime law); S & E Shipping, 678 F.2d at 644 (holding that a personal injury claim and a related loss of consortium claim can only be considered the same claim if the parties so stipulate); In re Boraks, 142 F.Supp. 364, 365 (D.Mass.1956). It is equally well settled that the potential for claims for attorneys' fees or costs against a shipowner by a claimant or a third party creates a multiple claimant situation necessitating a concursus. See, e.g., S & E Shipping, 678 F.2d at 645-46; Universal Towing, 595 F.2d at 419. Although both situations exist in this case, both are cured by the specific concessions in the Coronas' third amended stipulation. The appellees stipulated that the personal injury claim of Fran Corona would have "irrevocable priority" over Ana's loss of consortium claim and that any claims for attorneys' fees or costs would have priority over the claims of both of the Coronas. As the district court properly recognized, such concessions in stipulations are sufficient to allow claimants who might not otherwise be entitled to do so to proceed with common law actions in other forums. See, e.g., Lake Tankers, 354 U.S. at 149, 152-54, 77 S.Ct. at 1272-73 (approving similar use of such stipulations in a multiple claimant case); In re Moran Transportation, 185 F.2d at 388 (similarly approving use of "priority consent[s]" in multiple claimant context); S & E Shipping, 678 F.2d at 644; Universal Towing, 595 F.2d at 419-20.
 
 
 18
 The question remains whether the potential for claims against the shipowner for indemnification by any of the third parties sued by the Coronas in their other state court actions is enough to constitute a multiple claimant situation necessitating a concursus. There is a split in authority on this point. Two Courts of Appeals have held that an "injured party's claim and [a] third party's indemnity claim should be treated as a single claim for purposes of a limitation action." S & E Shipping, 678 F.2d at 645 (citing Universal Towing, 595 F.2d at 419). Those courts have argued that the indemnity claim is "merely derivative of the one presented by the claimant," Universal Towing, 595 F.2d at 419, and that "the claimants, in effect, may enforce only one damages award against the shipowner." S & E Shipping, 678 F.2d at 645 & n. 16. Other courts, however, have argued that the threat of claims for indemnity or contribution by third parties should create a multiple claimant situation. See, e.g., W.E. Hedger Transportation Corp. v. Gallotta, 145 F.2d 870, 872 (2d Cir.1944) (dictum) (L. Hand, J.); S & E Shipping, 678 F.2d at 648-49 (Kennedy, J., dissenting in part) (endorsing Hand view from W.E. Hedger ); In re AMF, 543 F.Supp. 431, 433 (S.D.N.Y.1982). In AMF, Judge Knapp faced a situation much like that now before us. A single injured party had sued multiple defendants, including the shipowner, in state court. In the limitation proceeding subsequently initiated by the shipowner, the lone plaintiff from the state court action was the only claimant. Considering the potential actions of the third parties named in the state action, Judge Knapp envisioned a plausible set of circumstances in which the shipowner ultimately could be held liable in excess of the limitation fund.[5] He concluded that "[t]his is precisely the result that the limitation of liability act was designed to avoid." Id. The scenario Judge Knapp imagined is much like that discussed by Judge Learned Hand in W.E. Hedger,[6] a decision that the district court in the instant case said established "the law of this circuit." 660 F.Supp. at 157 & n. 5.
 
 
 19
 We agree with the conclusion reached by Judge Knapp in AMF and we agree that Judge Hand's dictum from W.E. Hedger should continue to form the foundation for the law of this Circuit. As long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a concursus. Judge Ward did not believe, however, that such a state of affairs necessarily precluded him from lifting that portion of his earlier stay that had enjoined the appellees' prosecution of their state court action against the shipowners. Rather, he held that his retention of jurisdiction over the limitation proceeding and the effect of the Coronas' third amended stipulation would adequately protect the appellants in accordance with the Limitation of Liability Act. See 660 F.Supp. at 158-60. We must consider, then, whether the safeguards embodied in the Coronas' stipulation and the district court's decision are indeed sufficient to satisfy the provisions and policies of the Act.
 
 III.
 
 20
 Relying primarily on a recognized admiralty treatise, the district court considered the sufficiency of the appellees' stipulation in light of a four-part test designed to allow a claimant to proceed in another forum under the lone claimant exception. The court held that
 
 
 21
 [t]o avail himself of this avenue a claimant must:
 
 
 22
 a) file his claim in the limitation proceeding;
 
 
 23
 b) where a stipulation for value has been filed in lieu of the transfer of the ship to a trustee, concede the sufficiency in amount of the stipulation;
 
 
 24
 c) consent to waive any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in the state court;
 
 
 25
 d) concede petitioner shipowner's right to litigate all issues relating to limitation in the limitation proceeding.
 
 
 26
 Id. at 156 (citing G. Gilmore & C. Black, supra, Sec. 10-19, at 869-74).[7] Relying principally on the final two portions of the test, the district court concluded that the Coronas had adequately recognized and conceded the admiralty court's exclusive jurisdiction over the limitation of liability and the shipowners' right to have all such matters litigated in that forum. Id. at 158-60. We agree, noting that the use of such stipulations to "preserv[e] common law remedies under the saving to suitors clause" is well established. See id. at 158 (citing Ex parte Green ). See also Lake Tankers, 354 U.S. at 152-54, 77 S.Ct. at 1272-73; In re Moran Transportation, 185 F.2d at 388. As we have held, a claimant need not concede a shipowner's ultimate right to have its liability limited, only the shipowner's right to have that matter adjudicated exclusively in the admiralty court. In re Red Star Barge Line, 160 F.2d at 437-38. We believe that the appellees' third amended stipulation adequately satisfied this requirement.
 
 
 27
 Finally, we must consider whether the additional safeguards imposed by the district court are sufficient to protect the appellants from the prospect of excess liability at the hands of third parties. In allowing the Coronas to pursue their state court action against the shipowners, the district court retained jurisdiction and "continue[d] the stay against entry of judgment and consequent enforcement of any recovery achieved in that [state] proceeding pending the outcome of this limitation proceeding." 660 F.Supp. at 160. The court held that if any of the third parties also being sued by the appellees in state court were to seek indemnification or recovery from the shipowners based on their liability to the Coronas, "the [c]ourt would be obligated to grant[ ] a stay of any [such] ... claims ... unless the third parties executed appropriate stipulations preserving ... [the shipowners'] right to limitation." Id. at 159. The district court also concluded that the third parties could not "directly [or indirectly] utilize the benefits of issue preclusion to undermine ... [appellants'] right to limitation." See id. at 159 & n. 8. In concluding that its retention of jurisdiction over the limitation proceeding could thus forestall any recovery by a third party in excess of the limitation fund, the district court relied in part on similar procedures employed by Judge Knapp in AMF. See id. at 160 (citing AMF, 543 F.Supp. at 431). See also note 5, supra.
 
 
 28
 At oral argument of this appeal we expressed our concern that the appellees' third amended stipulation might not adequately protect the shipowners from potential liability at the hands of third parties. Paragraph Six of the stipulation, as originally drafted, provided that the Coronas would not expose the shipowners to any liability in excess of $7.6 million as a result of any judgment entered in "the State Court action." Third Amended Stipulation at p 6 (emphasis added). This reference presumably included the Coronas' existing state court action against the appellant shipowners, but might not include the actions instituted against other parties or any other actions instituted after the submission of the stipulation. The appellees, with the permission of this Court, thereafter amended Paragraph Six. The appellees now stipulate that
 
 
 29
 in the event there is a judgment or recovery in any State Court actions in excess of $7,671,000 whether against the plaintiffs, or any other liable parties who may cross-claim or claim over against the plaintiffs, in no event will claimant Fran Corona, and Ana Corona, his wife seek to enforce said excess judgment or recovery insofar as same may expose plaintiffs to liability in excess of SEVEN MILLION SIX HUNDRED SEVENTY-ONE THOUSAND ($7,671,000.00) DOLLARS pending the adjudication of Limitation of Liability in the District Court.
 
 
 30
 We believe that this amendment is significant in that it embodies the claimants' intention that the shipowners shall not, in any set of circumstances, be exposed to liability in excess of the limitation fund. Given this concession, we agree with the procedures employed by the district court. As long as the admiralty court can effectively ensure that a shipowner will not face liability in excess of the limitation fund, it must take all steps necessary to assure that claimants are allowed to pursue their common law remedies in accordance with the "saving to suitors" clause. As the Supreme Court has explained:
 
 
 31
 The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability. In fact, the Congress not only created the limitation procedure for the primary purpose of apportioning the limitation fund among the claimants where that fund was inadequate to pay the claims in full, but it reserved to such suitors their common-law remedies. In view of this explicit mandate from the Congress the respondent must not be thwarted in her attempt to employ her common-law remedy in the state court where she may obtain trial by jury.
 
 
 32
 ... [T]he shipowner, so long as his claim of limited liability is not jeopardized, is subject to all common-law remedies available against other parties in damage actions.
 
 
 33
 Lake Tankers, 354 U.S. at 152-53, 77 S.Ct. at 1272-73 (citations omitted).
 
 
 34
 Of course, we are aware that endorsing the procedure employed by the district court, while also reaffirming the rule that the prospect of claims for indemnification creates a multiple claimant situation, could produce some tension in the rules governing such cases. In essence, the combination of our views on these matters creates a potentially broad exception that often could allow claimants such as the Coronas to proceed in other forums despite the fact that the shipowner faces what would be termed a multiple claimant situation. This entire area, however, is permeated by the tension inherent in the "inconsistent and contradictory policies" of the Limitation of Liability Act and the "saving to suitors" clause. See G. Gilmore & C. Black, supra, Sec. 10-18, at 864. Given this reality, we believe that admiralty courts must strive whenever possible to promote the policies underlying both provisions. As long as the stipulations filed by plaintiffs in outside proceedings are sufficient, and as long as the district court retains jurisdiction sufficient to preclude any "entry of judgment and consequent enforcement of ... recovery ... pending the outcome of th[e] limitation proceeding," 660 F.Supp. at 160, claimants such as the Coronas should be allowed to pursue their common law remedies outside of the admiralty forum.
 
 
 35
 The appellants also argue that they should be entitled to remain in admiralty to litigate their suit with the Coronas so that they might enjoy the procedural benefits of Fed.R.Civ.P. 39(c) and 14(c). We find this argument to be without merit. "If claimants have a substantive right to pursue their cause of action under the 'saving to suitors clause,' it can hardly be abrogated by a federal procedural rule." Jefferson Barracks Marine, 763 F.2d at 1011 (citing the Rules Enabling Act, 28 U.S.C. Sec. 2072 (1982)).
 
 CONCLUSION
 
 36
 For all of the foregoing reasons, we affirm the order of the district court.
 
 VAN GRAAFEILAND, Circuit Judge:
 
 37
 I concur in the result.
 
 
 
 [1]
 The petitioners' original complaint identified Scheepvaart Maats Christina B.V. as the sole owner and operator of the M.V. CHRISTINA. Dammers & Vanderheide was identified as the manager of the CHRISTINA. Petitioners claim that Dammers & Vanderheide was made a party to this action only because of the appellees' allegation that it held some ownership interest in the vessel. For purposes of this appeal, we will refer to both parties jointly as "the shipowners" or "the appellants." We draw no conclusion, however, as to whether Dammers & Vanderheide may have any ownership interest in the CHRISTINA
 
 
 [2]
 Acting in accordance with 46 U.S.C. Sec. 185 and Fed.R.Civ.P. Supplemental Rule F(1), the appellants offered security in the form of a "letter of undertaking" from the United Kingdom Mutual Assurance Association (Bermuda) Limited, agreeing to assume any liability of the shipowners up to the stipulated amount of $7,671,000. The district court approved the use of the letter as security
 
 
 [3]
 The district court described the status of those actions as follows:
 [T]he Coronas sued the ship builder of the Christina in the New York Supreme Court, New York County. Corona v. Van Der Geissen-De Noord B.V., No. 1454-86 (Gammerman, J.). Justice Gammerman dismissed that action for lack of personal jurisdiction. The Coronas have appealed that decision. The Coronas recently commenced a third action against Standard Fruit and Steamship Company, [the vessel's charterer,] John Doe I, John Doe II and John Doe III. In a letter to the Court dated March 12, 1987, the Corona's counsel, George Duffy, Esq., informed the Court that "[t]he defendant John Doe I listed in actions number two and three is identified as the certifying agency employed to inspect and test all lifting gear, cables, etc. on the said vessel M/V CHRISTINA. The defendant John Doe II in both actions is the supplier, manufacturer, seller or otherwise responsible for the lifting gear, cable, etc. of the vessel M/V CHRISTINA. The defendant John Doe II [sic] is identified as the architect, engineer or designer of the vessel M/V CHRISTINA." In the same letter, Duffy confirmed that none of the defendants in either action has moved to implead petitioners.
 
 
 [660]
 F.Supp. at 156 n. 4. At oral argument of this appeal, counsel for both sides agreed that those actions are still pending, but that none of the third parties sued by the Coronas had yet sought to implead the shipowners
 
 
 [4]
 In relevant part, 28 U.S.C. Sec. 1333 provides:
 The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
 (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
 The essential thrust of this section dates back to section 9 of the Judiciary Act of 1789, which provided that:
 [T]he district courts ... shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction ... saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it....
 
 
 [1]
 Stat. 76-77. The savings clause has long been recognized as meaning that
 in cases of concurrent jurisdiction in admiralty and common law, the jurisdiction in the latter is not taken away. The saving is for the benefit of suitors, plaintiff and defendant, when the plaintiff in a case of concurrent jurisdiction chooses to sue in the common law courts, so giving to himself and the defendant all the advantages which such tribunals can give to suitors in them.
 Waring v. Clarke, 46 U.S. (5 How.) 441, 460, 12 L.Ed. 226 (1847).
 
 
 [5]
 In AMF, Merryl Wilson, a passenger in a pleasure boat, was injured when the craft collided with another vessel, the LAURIE. Wilson instituted a personal injury action in a state court, naming as defendants both Richardson, the owner of the pleasure boat in which she had been riding, and AMF, the owner of the LAURIE. Richardson thereafter cross-claimed against AMF for "indemnity and/or contribution," whereupon AMF sought the protection of the Limitation of Liability Act. 543 F.Supp. at 432. The district court approved AMF's stipulation of $396,000 as the value of the limitation fund. Id. When Richardson did not file as a claimant in the admiralty proceeding, Wilson sought leave to pursue her common law action against the shipowner. Judge Knapp lifted the stay as to that action, but retained jurisdiction over the entire matter after considering the following potential set of circumstances:
 The complaint in the state court action demands $2,500,000 in damages. Let us arbitrarily assume that the state jury were to fix Mrs. Wilson's damages at $2,000,000; find her free of contributory negligence; and find Richardson and the LAURIE to have been equally at fault. Let us further assume that, having entered judgment in the amount of $2,000,000 against both Richardson and the Owner, Mrs. Wilson were to levy on the LAURIE, succeed in selling it for $400,000, and then actually collect $1,500,000 from Richardson. On this set of assumptions, the Owner--having lost the ship--would nevertheless be faced with an unsatisfied judgment in the amount of $100,000 in Mrs. Wilson's hands; and an unsatisfied claim over of $500,000 by Richardson.
 Id. at 433 (footnote omitted). Consequently, the district court maintained its stay against "entry of judgment and consequent enforcement of any recovery there secured against ... [AMF]--whether on Wilson's direct claim or on Richardson's cross-claim--pending resolution in this court of ... [AMF's] right to limit its liability." Id.
 
 
 [6]
 The district court described the situation in W.E. Hedger as follows:
 In Hedger the petitioner had orally chartered a barge to a shipping company. A longshoreman, Ga[l]lotta, working on the barge was injured when he fell into the hold. He sued Hedger, the barge's owner, for $25,000. The owner filed a petition to limit its liability to the asserted $7,000 value of the barge. The longshoreman consented to the limitation of liability. Once the district court lifted the stay, the longshoreman joined the barge's operators, the Manhattan Company, who promptly cross-claimed against the owners. The owners then moved to vacate the order dissolving the stay on the ground that the operator's cross-claim constituted a second claim requiring a concursus. In dictum, Judge Hand indicated that the claims were distinct.
 [Gallotta's] position is that the cross-claim of the Manhattan Company against the Hedger Company is the same as his claim against that company, and that therefore there was only one claim as before. As to that we cannot agree. It is true that if Gallotta recovered against both companies but collected from Manhattan Company, any recovery by that company against the Hedger Company upon its cross-claim up to the value of the barge, might be regarded as a recovery by a subrogatee, substituted for the creditor. But, if Gallotta recovered from the Manhattan Company more than the value of the barge, the excess could obviously not be so regarded; nor could the Manhattan Company's recovery of the expenses involved in defending the action. We cannot therefore dispose of the case upon the assumption that only one claim is involved, and that the controversy in the state court can be resolved into no more than whether the Hedger Company or the Manhattan Company shall pay Gallotta the value of the barge.
 W.E. Hedger Transportation Corp. v. Gallotta, 145 F.2d 870, 872 (2d Cir.1944).
 
 
 [660]
 F.Supp. at 157 n. 5
 
 
 [7]
 At least one other court has relied on the same treatise in adopting the four-part test. See Jefferson Barracks Marine, 763 F.2d at 1010 & n. 1. Although we believe that parts (a), (c) and (d) of the test are necessary to resolve the problems we discuss in this opinion, we are less certain about part (b). There is disagreement in the cases as to whether a claimant seeking leave to pursue remedies in other forums must concede the sufficiency of the security offered by the shipowner. Compare id. with Anderson v. Nadon, 360 F.2d 53, 58 n. 8 (9th Cir.1966) (arguing that as long as claimants concede the exclusive jurisdiction of the admiralty court over limitation of liability, they may reserve the right "to contest the adequacy of the stipulation for value"), and In re North Lubec Manufacturing and Canning Co., 640 F.Supp. 636, 640-41 & n. 6 (D.Me.1986) (same). Although the Gilmore & Black treatise relies heavily on Second Circuit precedent in forging the four-part test, see G. Gilmore & C. Black, supra, Sec. 10-19, at 871 & n. 84, the courts in Anderson and North Lubec Manufacturing argue that those Second Circuit cases do not necessarily stand for the proposition that such a concession ought to be an absolute prerequisite to allowing a claimant to proceed in other forums. Moreover, Fed.R.Civ.P. Supplemental Rule F(7) explicitly grants claimants the right to contest the valuation of security offered by the shipowner in a limitation proceeding. The district court's order in this case approving the shipowner's proffered security and stipulation of value appears to anticipate the possibility of such a later challenge. Although we need not decide this question today, we wish to make it clear that we are not endorsing all aspects of the four-part test employed by the district court. Specifically, we reserve judgment as to part (b) of that test