Melinda KATTELMAN, et al.

v.

OTIS ENGINEERING CORP., et al.

Civ. A. No. 88–2703.

United States District Court,
E.D. Louisiana.

Dec. 9, 1988.

---

Baldwin & Haspel, Mary Ann McGrath Swaim, New Orleans, La., for Melinda Phillips Kattelman.

Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Robert E. Winn, Louis Leonard Galvis, New Orleans, La., for Patricia M. Valentine.

Hebert, Mouledoux & Bland, Maurice C. Hebert, Jr., Wilton E. Bland, III, T.A., John M. Ribarits, New Orleans, La., for Otis Engineering Corp.

Milling, Benson, Woodward, Hillyer, Pierson & Miller, Joseph W. Looney, New Orleans, La., for Chevron U.S.A., Inc.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, La., for Axelson, Inc.

Galloway, Johnson, Tompkins & Burr, Timothy F. Burr, Deborah B. Ginsburg, New Orleans, La., for Vetco Gray Inc.

## ORDER AND REASONS

FELDMAN, District Judge.

In this maritime wrongful death action, plaintiffs allege that the death of Glenn Kattelman, a wireline worker aboard the M/V CHARLES E. MASTERS, was caused by the negligence of decedent's employer,

Otis Engineering Corporation, or by the negligence of defendants Chevron, Vetco Gray, Inc., and Axelson, Inc., or by the combined acts of all defendants.

Plaintiffs originally brought suit in state court under the Jones Act. Defendants removed the case to this Court where a stay of prosecution was entered pursuant to the Limitation of Liability Act, 46 U.S.C. App. § 185 *et seq.* Plaintiffs then filed motions to lift the stay and to remand the case back to state court.

On August 31, 1988, this Court determined that plaintiffs' remand motion could not be heard until the stay order was lifted. On October 6, 1988, this Court denied plaintiffs' Motion to Lift the Stay, 696 F.Supp. 1111, holding that plaintiffs' stipulations were inadequate to protect the vessel owner's rights under the Limitation of Liability Act. Specifically, the Court found that plaintiffs had failed to stipulate that wrongful death claims would have irrevocable priority over consortium claims; had not protected the shipowner from excess liability arising out of third-party indemnification; and had not stipulated that a third party's attorneys' fees would have irrevocable priority over plaintiffs' claims.

On November 16, 1988, plaintiffs submitted Supplemental and Amending Stipulations to cure the insufficiencies noted by this Court in its October 6, 1988 Order. Plaintiffs stipulated that any wrongful death claims would have irrevocable priority over all consortium claims; that any claims filed by Axelson, Inc. or Vetco Gray, Inc. for attorneys' fees would have priority over all of plaintiffs' claims; and that if plaintiffs recover more than $241,000.00 (the value of the vessel and its cargo) in state court, "in no event will plaintiffs seek to enforce excess judgments against Otis Engineering Corporation, Axelson, Inc. or Vetco Gray, Inc. ... until such time as there has been an adjudication of limitation by this Court...."

The Court accepted plaintiffs' stipulations. Now before this Court are plaintiffs' motions to lift the stay order and to remand the case to state court.

## I. Motion to Lift the Stay

Defendants contend that plaintiffs' amended stipulations are still insufficient to protect the vessel owner's right to limitation of liability, and that the stay should remain in effect until further stipulations are made. First, defendants claim plaintiffs must stipulate that the limitation fund of $241,000.00—the value of the vessel and its cargo—is the limit of the vessel owner's liability. Defendants argue that such a stipulation is required by *Ex parte Green,* 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932). However, no court, including the Fifth Circuit, has ever read *Green* as broadly as the defendants would, and this Court declines the invitation to do so here.

In *Green,* plaintiff sued a shipowner in state court for injuries suffered aboard defendant's vessel. Defendant then brought a limitation of liability action in federal court, and that court issued a stay of prosecution. The district court found no liability and dismissed the case. The Ninth Circuit reversed and remanded. The Supreme Court reversed the decree of both courts, holding that the action was properly brought in state court, and that the district court should have allowed the state court to proceed. However, the Court also stated that the district court should retain the limitation of liability petition. As the Court explained:

> It is clear from our opinion that the state court has no jurisdiction to determine the question of the owner's right to a limited liability, and that, if the value of the vessel be not accepted as the limit of the owner's liability, the federal court is authorized to resume jurisdiction and dispose of the whole case.

286 U.S. at 439–40, 52 S.Ct. at 603.

Defendants argue that this language requires plaintiffs to stipulate the vessel value as the limit of the owner's liability before the case can proceed in state court. However, the stipulation issue was not before the Supreme Court in *Green.* The Court merely affirmed the district court's ruling that "the question of the owner's right to limited liability having been raised, the cause became cognizable only in admi-

ralty, and that its further prosecution in the state court should be enjoined." *Id.* at 440, 52 S.Ct. at 603. To read *Green* otherwise would pre-determine the right of Otis to the limitation defense without a proper inquiry into facts supporting or negating the defense.

Thus, subsequent appellate courts have interpreted *Green* to require only that plaintiffs stipulate to exclusive admiralty jurisdiction over all limitation of liability questions. *See, e.g., Universal Towing v. Barrale,* 595 F.2d 414, 418 (8th Cir.1979); *Helena Marine Service, Inc. v. Sioux City,* 564 F.2d 15, 17 (8th Cir.1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); *Petition of Red Barge Line,* 160 F.2d 436 (2d Cir.1947), *cert. denied,* 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947).

Indeed, the Second Circuit recently rejected the reading of *Green* that defendants now urge upon this Court. In *Complaint of Dammers & Vanderheide,* 836 F.2d 750, 758 (2d Cir.1988), the court explained, "As we have held, a claimant need not concede a shipowner's ultimate right to have its liability limited, only the shipowner's right to have that matter adjudicated exclusively in the admiralty court."

The Fifth Circuit may have indicated how it would read *Green* when it affirmed the district court's holding in *In re Humble Oil & Refining Co.,* 210 F.Supp. 638 (S.D.Tex. 1961), *aff'd* 311 F.2d 576 (5th Cir.1962). In *Humble Oil,* the district court, citing *Green,* stated, "... the claimant may maintain an action in the state court if it is conceded of record that all questions of limitation of liability are reserved for the admiralty court." 210 F.Supp. at 639. Nowhere in the opinion does the court suggest that a claimant must stipulate the value of the vessel as the limit of the owner's liability. Moreover, in later opinions the Fifth Circuit has cited with approval *Petition of Red Star Barge Line,* 160 F.2d 436 (2d Cir.1947), a case in which the Second Circuit interprets *Green* to require only that claimants stipulate to the federal court's exclusive jurisdiction over the limitation action. *See, e.g., Rubenstein v. Bryant,* 522

F.2d 1351, 1352 (5th Cir.1975); *Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546, 549 n. 8 (5th Cir.1960).

It would seem that requiring claimants to stipulate to the court's admiralty jurisdiction over limitation questions provides the vessel owner with no more protection than does the statute itself. However, subsequent appellate courts, including the Fifth Circuit, have never read the *Green* dicta to add more than the plain language of the Act. Consequently, this Court leaves to Congress the task of amending the Act to require the kind of stipulation defendants seek. Under the law as it now stands, plaintiffs need not make such a stipulation before the stay of prosecution can be lifted.

Otis Engineering contends that plaintiffs' stipulations are inadequate in two other respects. Otis claims that 1) plaintiffs' third party indemnification stipulations must include third party defendant, Chevron U.S.A., and 2) all third parties must join in plaintiffs' stipulations. Both arguments are without merit.

Chevron U.S.A. and Otis were parties to a charter agreement, a contractual relationship. The Supreme Court long ago established that the Limitation of Liability Act does not protect a vessel owner from liability arising out of personal contractual obligations. In *Richardson v. Harmon,* 222 U.S. 96, 106, 32 S.Ct. 27, 30, 56 L.Ed. 110 (1911), the Court clearly stated that the Limitation Act

> limit[s] the owner's risk to his interest in the ship in respect of all claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime, but leaves him liable for his own fault, neglect and contracts.

The Supreme Court applied this "personal contract" exception to charter party agreements in *Pendleton v. Benner Line,* 246 U.S. 353, 356–57, 38 S.Ct. 330, 331–32, 62 L.Ed. 770 (1918). There the Court refused to allow a vessel owner to limit his liability incurred under a charter agreement, explaining:

That the statute does not limit liability for the personal acts of the owners done with knowledge is established by Richardson v. Harmon, 222 U.S. 96.... It was said in that case ... that section 18 leaves the owner 'liable for his own fault, neglect and contracts.' The principle was held to apply to contracts less personal that this [charter party] in Great Lakes Towing Co. v. Mill Transportation Co., 155 Fed. 11 ... and in The Loyal, 204 Fed. 930.... We are not disposed to disturb the very strong and deliberate intimations of Richardson v. Harmon in their application to the present case. It is said that the owners did their best to make the vessel seaworthy and that if it was not so the failure was wholly without the privity or knowledge of the petitioner. But that is not the material question in the case of a warranty. Unless the petitioner can be discharged from his contract altogether he must answer for the breach whether he was to blame for it or not.

*Id. See also, S & E Shipping Corp. v. Chesapeake & O. Ry. Co.,* 678 F.2d 636, 644 n. 14 (6th Cir.1982) ("The Court established the personal contract exception because the Act is only intended to limit the shipowner's liability for matters beyond his control. A personal contract is obviously within the control of the shipowner.").

■ Under clear Supreme Court precedent, liability in Otis stemming from a personal contract with Chevron U.S.A. is not subject to limitation under the Act. Therefore, plaintiffs are not required to include Chevron in their third party indemnification stipulations.

■ Otis' other argument that "for it to be thoroughly and completely protected, as envisioned by the Supreme Court in the *Green* case, third parties should be obligated to enter into similar stipulations [as did the plaintiffs]" is similarly unpersuasive. Otis does not cite a single case holding that the Act requires third parties to make any stipulations whatsoever regarding limitation of liability. Otis merely invokes the protective cover of *Green.* As this Court noted, *Green* did not address the question

of stipulations at all; *Green* was concerned with the exclusive jurisdiction of federal courts over limitation of liability questions. That was all the "protection" the Supreme Court envisioned for the vessel owner in a limitation proceeding.

The one case that does address in detail the third party indemnification problem is *Complaint of Dammers & Vanderheide,* 836 F.2d 750 (2d Cir.1988). There the Second Circuit expressed concern that the plaintiffs' amended stipulations "might not adequately protect shipowners from potential liability at the hands of third parties." *Id.* at 759. The court reviewed plaintiffs' stipulation that they would not expose the shipowners to any liability in excess of the vessel value as a result of any judgment entered in *"the* State Court action." *Id.* (Emphasis in original). The court stated that although this stipulation probably included plaintiffs' existing state court action against the shipowners, it "might not include the actions instituted against other parties *or any other actions instituted after the submission of the stipulation." Id.* (Emphasis added). Thus, the plaintiffs amended the stipulation again to read:

in the event there is a judgment or recovery in *any* State Court *actions* in excess of $7,671,000 whether against the plaintiffs, or any other liable parties who may cross-claim or claim over against the plaintiffs, in no event will claimant Fran Corona, and Ana Corona, his wife seek to enforce said excess judgment or recovery insofar as same may expose plaintiffs to liability in excess of SEVEN MILLION SIX HUNDRED SEVENTY-ONE THOUSAND ($7,671,000.00) DOLLARS pending the adjudication of Limitation of Liability in the District Court.

*Id.*

An important consideration for the Court is that plaintiffs' amended stipulation in this case now mirrors the *Dammers* stipulation exactly. Plaintiffs have amended their stipulation, patterning it after the *Dammers* language, and as the *Dammers* court stated, "We believe that this amendment is significant in that it embodies the claimants' intention that the shipowners

shall not, in any set of circumstances, be exposed to liability in excess of the limitation fund." *Id.*

Because the Court finds that plaintiffs' amended stipulations meet the previously stated concerns regarding Otis' rights under the Limitation of Liability Act, plaintiffs' motion to lift the stay of prosecution is GRANTED. Of course, under the direction of *Green* and its progeny, this Court maintains jurisdiction over the limitation proceeding, and continues the stay against enforcement of any recovery pending the outcome of the limitation proceeding.

## II. Motion to Remand

Having decided to lift the stay of prosecution, this Court must now address plaintiffs' motion to remand. On June 1, 1988, plaintiffs filed suit in the Orleans Parish Civil District Court under the Jones Act. The complaint alleged that "on Thursday, January 28, 1988, while working in the course and scope of his employment with defendant, Otis, Glenn Kattelman suffered fatal injuries when a pressurized metal housing bolted to defendant Chevron's valve assembly located in the Gulf of Mexico suddenly and without warning was sheared from the bolts and exploded in his face."; that decedent's death was caused by the negligence of Otis; that at all relevant times, defendant Otis was the owner and operator of the CHARLES E. MASTERS; and that the decedent was employed by Otis as a seaman, "being a member of the crew of the vessel CHARLES E. MASTERS and/or the Otis fleet employed to assist in the performance and completion of the various missions for which Otis vessels had been commissioned by defendant Chevron."

■ Plaintiffs contend that these allegations are sufficient to state a Jones Act claim. A Jones Act claim filed in state court may not be removed to federal court because 28 U.S.C. § 1445(a) provides that a civil action arising under 45 U.S.C. §§ 51–60 may not be removed to any district court, and the Jones Act incorporates that statutory provision.

Defendants concede that a proper Jones Act claim filed in state court may not be removed to federal court; however, defendants argue that plaintiffs can not state a proper Jones Act claim because the decedent was not a Jones Act seaman. Hence, defendants contend that the Court should deny plaintiffs' remand motion. Alternatively, defendants suggest that this Court should conduct preliminary discovery into decedent's status before proceeding to the remand motion. Defendants' arguments are without merit.

The case of *Lonthier v. Northwest Ins. Co.,* 599 F.Supp. 963 (W.D.La.1985) is quite instructive here. In *Lonthier,* plaintiffs filed suit in state court under both the Jones Act and general maritime law. Defendants removed, and plaintiffs moved for remand. Defendants contended that remand was improper because the plaintiff was not a Jones Act seaman. However, as the court explained:

> [T]he mere assertion that the plaintiff is not a Jones Act seaman cannot overcome the motion to remand where, as in the case here, the complaint states a claim under the Jones Act. In order to prevail on the motion to remand in this situation, the defendants must go further and prove that the allegation of Jones Act status is so baseless, colorable and false so as to constitute a fraudulent attempt to evade removal to federal court. The burden of proving that the allegations were made fraudulently falls on the defendants, and any doubts should be resolved in favor of the plaintiffs.

*Id.* at 965. *See also, Yawn v. Southern Ry. Co.,* 591 F.2d 312, 316–17 (5th Cir. 1979), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979).

■ The Fifth Circuit long ago established the threshold basis for stating a cause of action under the Jones Act: 1) the worker must be assigned permanently to a vessel or identifiable fleet of vessels; 2) his duties must contribute to the function, mission, operation, or welfare of the vessel. *Offshore Co. v. Robinson,* 266 F.2d 769, 775 (5th Cir.1959). *See also Barrett v. Chevron,* 781 F.2d 1067 (5th Cir.1986).

Plaintiffs' original complaint, therefore, states a cause of action under the Jones Act. Thus, the burden shifts to defendants to "prove that the allegation of Jones Act status is so baseless, colorable, and false so as to constitute a fraudulent attempt to evade removal to federal court." *Yawn; Lonthier,* supra.

■ Defendants have not met this burden. Vetco Gray, Inc. even concedes in its opposition to remand that it "possesses no independent facts which would allow the Court to conclude that plaintiffs' decedent was, or was not, a Jones Act seaman...." It would seem that Vetco's fellow defendants are similarly situated. As a last resort, defendants urge this Court to conduct preliminary discovery into decedent's status before ruling on plaintiffs' remand motion. However, the Fifth Circuit has clearly held that such "pre-trial" of substantive factual issues in order to determine the existence of subject matter jurisdiction on removal is an inappropriate judicial exercise. *See Green v. Amerada Hess Corp.,* 707 F.2d 201 (5th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984); *B., Inc. v. Miller Brewing Company,* 663 F.2d 545 (5th Cir.1981).

This Court agrees with the decision in *Lonthier* that

[t]he issue of seaman's status goes to the substance of the plaintiff's claim for liability under the Jones Act; the Court therefore should not withhold ruling on the motion to remand pending further discovery and an evidentiary hearing. If the Court were to rule otherwise and permit extensive factual inquiry on this issue, defendants would be able to routinely try the question of Jones Act status in federal court by filing a petition for removal. Congress has granted the Jones Act plaintiff the right to pursue his claim in state court without removal to federal court and, absent proof of fraud in the allegations of Jones Act status, the plaintiff is entitled to litigate his claim, whatever ultimate merit, in state court.... The motion to remand compels the defendant to come forward with proof that the allegation of Jones

Act status is so baseless, colorable and false so as to constitute a fraudulent attempt to evade removal. Absent such proof, the case will be remanded without further delay.

599 F.Supp. at 965.

Defendants' only "proof" that plaintiffs' Jones Act claim is baseless is their evidence that decedent was a wireline worker. Defendants contend that wireline workers are not Jones Act seamen, citing *Ardleigh v. Schlumberger Limited,* 832 F.2d 933 (5th Cir.1987) and *Langston v. Scheumberger Offshore Services, Inc.,* 809 F.2d 1192 (5th Cir.1987).

Defendants' position mischaracterizes the law. Although wireline operators often are not accorded the safe harbor of the Jones Act, the Fifth Circuit has never articulated a *per se* rule that persons performing wireline functions are not Jones Act seamen. In *Langston,* the court held that plaintiff, a wireline worker, was not a Jones Act seaman because, "[f]rom the time she started her new assignment until her accident, Langston performed approximately 32% of her work on fifteen different vessels owned by ten unrelated owners." *Id.* at 1194. Concluding that these differently owned vessels did not constitute a "fleet", the court found that plaintiff was not a seaman under the Jones Act. The court did not hold, however, that plaintiff's mere status as a wireline worker exempted her from Jones Act protection.

Similarly, in *Ardleigh,* the court found that because plaintiff, a wireline worker, spent a significant amount of time on several seagoing vessels, he had no permanent relationship with a particular vessel or fleet of vessels. Thus, the court held that plaintiff could not be classified as a seaman.

■ Defendants here rely solely on decedent's status as a wireline worker to conclude that, as a matter of law, decedent was not a Jones Act seaman. However, this Circuit has never adopted such a reflexive approach; instead, the Circuit has examined the wireline worker's relationship to the vessel or vessels on which he worked and the relationship of the vessels to each other in determining whether the worker

could, on a fact-based analysis, claim Jones Act seaman status under existing legal standards for determining status.

Defendants here have not met their burden of proving that plaintiffs' Jones Act claim is "baseless" or "fraudulent". On the other hand, plaintiffs have met this Circuit's requirements for stating a Jones Act claim. Plaintiffs' Jones Act claim must therefore be remanded to state court.

Axelson; Inc. alternatively petitions this Court to remand only the Jones Act claim against Otis and to retain diversity jurisdiction over the claims asserted against it. Removal of the case to federal court was predicated upon 28 U.S.C. § 1441(c) which permits removal of an entire case "[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action." However, as the Fifth Circuit has repeatedly held, defendants' claims are removable only if they are "separate and independent" from the non-removable Jones Act claim. *See, e.g., Addison v. Gulf Coast Contracting Services, Inc.,* 744 F.2d 494 (5th Cir.1984). Moreover, the Supreme Court has held that where there is a single wrongful invasion of a single primary right, and the invasion arises from a series of interlocking transactions, the claims are not "separate and independent" under Section 1441(c). *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). If all damages arise "from a single incident" or if plaintiffs' claims against all defendants involve "substantially the same facts", a single primary right is implicated and removal is improper. *Id.* at 16, 71 S.Ct. at 541.

■ Here, plaintiffs allege that the wrongful acts of all defendants together in a series of intertwined conduct caused Glen Kattelman's death. Plaintiffs have therefore alleged the wrongful invasion of a single primary right, their mutual interest in Glen Kattelman's death. Because the non-Jones Act claims are interdependent with the Jones Act claim, and the Jones Act claim is non-removable, retention of diversi-

ty jurisdiction over the non-Jones Act defendants would be improper.

Plaintiffs' motion to remand the entire case to state court is GRANTED. This case will be closed pending an appropriate request to re-open the limitation proceeding.