**In the Matter of the Complaint of BERKLEY CURTIS BAY CO., and of Moran Towing & Transportation Co., Inc., as Owner and Bareboat Charterer, respectively, of Tug Grace Moran for Exoneration from or Limitation of Liability.**

**Clifford JACKSON and Edward Cohen, Plaintiffs,**

**v.**

**BERKLEY CURTIS BAY CO., Moran Towing & Transportation Co., Inc., and American Dredging Co., Defendants.**

**No. 78 Civ. 3552 (ADS).**

United States District Court,
S.D. New York.

Aug. 31, 1983.

See also, D.C., 557 F.Supp. 335.

John J. Corcoran, P.C., Brooklyn, N.Y., for plaintiffs Cohen and Jackson.

Burlingham, Underwood & Lord, New York City, for Berkley Curtis Bay Co. and Moran Towing & Transp. Co., Inc.; James W. Lynch, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for American Dredging Co., Inc.; Andres Runne, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

This memorandum deals with issues arising at the last stage of a limitation proceed-

ing which resulted from the sinking of the dredge *Pennsylvania* after it ran aground on a shoal off Rockaway Point on July 31, 1978. In a prior proceeding, a petition to limit or exonerate the liability of Berkley Curtis Bay Company and Moran Towing & Transportation Company, respectively the owner and bareboat charterer of the accompanying tug, was denied. At the same time Moran and Berkley were held collectively liable for 65% of the damages resulting from the accident and American Dredging Company, owner of the dredge *Pennsylvania,* was found liable for the remaining 35%.

The accident spawned claims for personal damages by eight seamen, six of whom settled before trial. The claims of the remaining two, Clifford Jackson and Edward Cohen, were tried before a jury on August 22–25, 1983. The jury returned a verdict in favor of Jackson of $100,000 in compensatory damages but found that Cohen had suffered no compensable injury. This memorandum concerns the pretrial motion of defendants Moran and Berkley to deny plaintiff Jackson a jury trial and the post-trial motions of both plaintiffs to set aside the jury's verdicts on damages as inadequate.

### A. *Right to jury trial.*

Both Cohen and Jackson made timely jury demands. Cohen's right to a jury was not contested. Moran and Berkley, however, contended that Jackson was not entitled to a jury because there was neither diversity of citizenship nor an employee-employer relationship between Jackson and Moran or Berkley. The Court permitted all the claims to be tried to the jury, taking the precaution, however, of independently determining Jackson's damages and sealing the Court's verdict in an envelope before the jury delivered its verdict. Thus, in the event the Court of Appeals should overrule the choice of the jury as fact finder, there would be no need to retry the case.

The right to a jury trial of a seaman's personal injury claim is closely related to the basis of jurisdiction asserted for that claim. A seaman suing his employer under the Jones Act is entitled to a jury, as is a seaman asserting a maritime claim under the diversity jurisdiction of the federal courts. *See* 28 U.S.C. §§ 1332, 1333 (containing clause saving to maritime suitors alternate common law diversity forum). However, claims in admiralty, for which Section 1333 supplies jurisdiction, have been traditionally tried to the court and are not entitled to jury trial. *See Romero v. International Terminal Operating Co.,* 358 U.S. 354, 369, 79 S.Ct. 468, 478, 3 L.Ed.2d 769 (1959). This Court had power to try all of Jackson's as well as Cohen's claims regardless of diversity, since it had jurisdiction in admiralty, 28 U.S.C. § 1333, over their claims against Moran and Berkley and federal question jurisdiction under the Jones Act, 46 U.S.C. § 688; 28 U.S.C. § 1331, over claims against their employer, American Dredging. The Supreme Court has long sanctioned the practice of hearing diversity, Jones Act, and admiralty claims in a single action. *Romero v. International Terminal Operating Co.,* 358 U.S. at 381, 79 S.Ct. at 485. The difficult question is whether some or all of the claims should be tried to the Court rather than to the jury.

Moran and Berkley Curtis cited *Powell v. Offshore Navigation,* 644 F.2d 1063 (5th Cir.1981), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981), as support for their contention that the claims against them and perhaps the entire case had to be tried to the court. *Powell* is inapposite. It dealt with a related but distinct issue: whether joinder of nondiverse parties sued under admiralty jurisdiction destroys diversity jurisdiction. The plaintiff in *Powell* was not a seaman and therefore had no Jones Act claim. He had asserted admiralty claims against a nondiverse party and diversity claims against diverse parties, arguing that admiralty was an "independent basis of jurisdiction" under the rule of *Romero. See* 358 U.S. at 381, 79 S.Ct. at 485. Thus, he reasoned, his admiralty claims could be joined with his diversity claims without destroying diversity jurisdiction. The Fifth Circuit rejected this argument in a decision which apparently has not been followed outside that circuit and has been criticized as misconstruing the nature

of federal jurisdiction over maritime claims. *See* Comment, Powell v. Offshore Navigation, Inc.,: *Jurisdiction over Maritime Claims and the Right to Trial by Jury,* 82 Colum.L.Rev. 784 (1982); Comment, *To Order Words of the Sea: The Rule of Complete Diversity and Joinder of Admiralty and Diversity Claims,* Powell v. Offshore Navigation, Inc., 70 Geo.L.J. 1369 (1982); *cf. Serrano v. Empresa Lineas Maritimas Argentinas,* 257 F.Supp. 870 (D.Md.1966) (concluding that admiralty and diversity claims could be joined without impinging on either jurisdiction). Whatever its merits, *Powell* does not stand for the proposition for which defendants cite it: that a plaintiff who joins admiralty claims with Jones Act claims must try his entire case in admiralty without a jury.

 Unlike Powell, Jackson had an uncontroverted statutory right, not dependent on diversity of citizenship, to a jury trial of his Jones Act claim against American Dredging. Joinder of Jackson's Jones Act claim with his admiralty claims in no way compromises his Jones Act jury right. To the contrary, where the nonjury admiralty tradition and a plaintiff's jury right conflict, the jury right must prevail.

The Federal Rules are designed to facilitate joinder of admiralty claims with claims brought under other bases of federal jurisdiction. *See* Fed.R.Civ.P. 20, Advisory Committee notes to 1966 amendment. The Rules indicate that claims originating under different sources of jurisdiction may be separated for trial to the appropriate fact-finder, Fed.R.Civ.P. 39, that joinder may not be construed to create a *right* to trial by jury of an admiralty claim, Fed.R.Civ.P. 38(e), but that in any event joinder may not be permitted to prejudice statutory or seventh amendment rights to a jury, Fed.R.Civ.P. 38(a). *See* Comment, 82 Colum.L.Rev. at 791–93, 804–05.

 In addition, the Supreme Court has made clear that there is no right to a nonjury trial in admiralty. In *Fitzgerald v. United States Lines,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963), the Court mandated jury trial of general maritime claims joined with Jones Act claims against a single defendant. The Court reasoned that while the seventh amendment did not require jury trials in admiralty, neither did it forbid them. *Id.* at 20, 83 S.Ct. at 1650. Rather than place "unnecessary obstacles" in the paths of litigants wishing to assert their Jones Act jury right, the Court used its power to fashion rules of admiralty procedure to mandate jury trial of admiralty claims which were not logically separable from Jones Act claims. *Id.* at 21, 83 S.Ct. at 1650. Courts have applied the principle of *Fitzgerald* in actions in which the claims against one party carried a jury entitlement and the claims against another did not. *See, e.g., Close v. Calmar Steamship Corp.,* 44 F.R.D. 398 (E.D.Pa.1968), *aff'd sub nom. Blake v. Farrell Lines, Inc.,* 417 F.2d 264 (3d Cir.1969) (where longshoremen's diversity negligence actions were consolidated with shipowner's admiralty indemnity actions, both would be heard to a jury).

 Judge Leval of this district recently resolved a similar conflict between jury and nonjury procedure in favor of jury trial. *Red Star Towing & Transportation Co. v. "Ming Giant",* 552 F.Supp. 367 (S.D.N.Y. 1982). In *Red Star,* defendants challenged the validity of using the Jones Act jury as factfinder in related proceedings arising from the Death on the High Seas Act and limitation rights in admiralty. Judge Leval observed that under *Fitzgerald* there is "no right, as opposed to a likely expectation, to a nonjury trial in admiralty.... Where claims with independent jurisdictional basis normally carrying a jury right, such as plaintiff's Jones Act claim, are joined with admiralty claims arising out of the same transaction or occurrence, all claims may be tried to a jury." *Id.* at 371. Jackson's Jones Act jury right therefore must prevail over any expectations Moran and Berkley might have had of receiving a nonjury trial in admiralty. This is especially appropriate where, as here, the complex issues of limitation and apportionment had already been decided and all that remained was the issue of damages, which jurors are well suited to decide. Furthermore, the damage claims at issue involved an apportionment of liability among the defendants, so they could not have been conveniently severed for trial to

separate factfinders or tried simultaneously to two factfinders with likelihood of different verdicts. Under the circumstances, the jury was the only proper factfinder.

## B. *Adequacy of damages.*

■ The jury awarded Jackson $100,000 and Cohen nothing. Each has moved to set aside the jury's award in his case as inadequate. Both motions are denied. In light of the conflicting testimony as to the cause of Jackson's initial injury, the reason for his subsequent deterioration, and the extent of his recovery, the jury's award was well within the range of reason.

■ Cohen's motion presents a more difficult question. While he offered considerable evidence at trial concerning the subsequent effects of the accident on his emotional and psychological health, at trial he made light of his actually having been thrown in the water. Further, in his proposed jury instructions he expressly waived any claim deriving from his concededly minimal physical injuries. *See* Plaintiffs' Memorandum at 2, 4 ("Cohen did not suffer severe, direct, physical traumatic injury.... Therefore, the area of damages is basically focused on the mental and emotional aspect."). The evidence concerning the emotional and psychological impact of the accident consisted entirely of the testimony of the plaintiff and his wife. The jury declined to credit their testimony, as it was entitled to do. That the Court as factfinder might have chosen to award at least token damages for Cohen's having been thrown in the water does not permit the verdict to be set aside as unreasonable, especially in light of Cohen's emphasis on subsequent psychological distress rather than any trauma he might have suffered during the event itself. The jury's finding that Cohen suffered no compensable injury was reasonable.

*Wheatley v. Beetar,* 637 F.2d 863 (2d Cir. 1980), does not require a different result. Wheatley brought an action for damages under 42 U.S.C. § 1983 against several police officers, alleging that they had unlawfully arrested and beat him. In the liability portion of a bifurcated trial, the jury found that one officer had unconstitutionally arrested Wheatley and that that officer and several others had subjected him to an unconstitutional degree of force. The jury awarded Wheatley $800 in damages by virtue of the unconstitutional arrest. But it awarded only one dollar as compensation for the beating, and the trial court denied Wheatley's motion for a new trial on damages. 637 F.2d at 864. The Second Circuit reversed, finding that the jury could not reasonably have found that Wheatley suffered no compensable pain and suffering from the beating. Specifically, the Court first held that the jury could not rationally have rejected the uncontradicted testimony of a doctor who examined Wheatley on the night of his arrest that the welts that appeared on his neck and side could only have resulted from a recent beating. *Id.* at 866–67. The Court also held that the jury's verdict on liability "conclusively supported" Wheatley's claim that he had been beaten. *Id.* at 867. "Once liability was established by the first verdict, Wheatley was entitled, even if the jury found that there were no lasting effects, to be compensated for the immediate pain and humiliation suffered." *Id.*

The doctor who testified on Cohen's behalf was a psychologist who based his diagnosis on the plaintiff's statement of purely subjective symptoms, allegedly suffered for four years after the accident. Thus here, unlike in *Wheatley,* the medical testimony related only to the plaintiff's descriptions of his own subjective reactions to the events of the accident; there was no objective evidence free of the problems of credibility attending the testimony of any plaintiff. In order to evaluate the significance of the doctor's testimony, the jury had first to assess the reliability of the information Cohen had conveyed to him. In *Wheatley,* by contrast, the doctor based his testimony upon his own observations of the plaintiff's physical condition. A jury's freedom to disregard an uncontradicted medical opinion amply supported by objective evidence of physical condition is considerably more constrained than its discretion to reject a medical opinion based wholly on the plaintiff's own description of his psychological symptoms.

The instant case also differs from *Wheatley* in that the finding of liability here did not establish the occurrence of a compensable injury. While it is established that the accident caused Cohen to be thrown into the sea, again only Cohen's testimony relating to the trauma was offered. Unlike Wheatley, Cohen has conceded that he suffered no physical injury, from which pain and suffering might flow as a matter of law. *See id.* at 867. The jury could rationally have concluded that Cohen, an experienced seaman, suffered no compensable emotional trauma as a result of his brief bout with the waves.

The Clerk will enter judgment granting Jackson $100,000, with $65,000 to be paid by Moran and Berkley, and $33,000 to be paid by American Dredging, ($35,000 less $2,000 already paid by the latter on insurance claims), plus costs to be charged to defendants in the same proportion; and dismissing Cohen's complaint with prejudice and costs.

SO ORDERED.