In the Matter of the Complaint of GREAT LAKES DREDGE & DOCK COMPANY, Owner of the tug Arthur F. Zeman, Jr., for Exoneration from or Limitation of Liability.

In the Matter of the Complaint of LONE STAR INDUSTRIES INC./NEW YORK TRAP ROCK CORP., Owners pro hac vice of Barges # 8, # 10, # 11, # 19, # 44, # 68, # 79, # 80 and # 90, for Exoneration from or Limitation of Liability.

Nos. 92 Civ. 6505 (WCC), 94 Civ. 6868 (WCC).

United States District Court, S.D. New York.

Aug. 3, 1995.

Healy & Baillie, New York City (Philip S. LaPenta, Andrew V. Buchsbaum, Cornelius J. O'Reilly, of counsel), for plaintiffs.

Mahoney & Keane, New York City (Edward A. Keane, Brian A. Smith, of counsel), Herman & Kramer, New York City, for claimants Karen Palmer and Estate of Edward L. Palmer.

Finz & Finz, P.C., New York City (Ross P. Masler, of counsel), for claimants James J. Palmer, Jennie S. Palmer and the Estate of James Edward Palmer.

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Great Lakes Dredge & Dock Company ("Great Lakes") and plaintiff Lone Star Industries Inc./New York Trap Rock Corp. ("Lone Star") have brought separate actions for limitation or exoneration of liability pursuant to 46 U.S.C.App. § 183(a) and Fed.R.Civ.P. Supplemental Rule F. Certain of the claimants[1] in both actions have made timely requests for a jury trial of their claims. For the following reasons, the claimants' request that a jury be empaneled is granted.

## BACKGROUND

### A. Factual and Procedural Background

On July 30, 1992, a tug owned by Great Lakes was pushing nine scows owned by Lone Star on the Hudson River near Yonkers, New York. The tug and barges collided with a pleasure boat carrying three people. The owner of the pleasure boat, Edward L. Palmer, and his brother, James Edward Palmer, were killed. James J. Palmer, son of James Edward Palmer, was injured.

On August 31, 1992, Great Lakes filed this action seeking limitation or exoneration of liability under 46 U.S.C.App. § 183(a). On the same date, this Court entered an Order approving plaintiff's stipulation of the value of the vessel as $1,100,000 and enjoining the filing of any suits outside the limitation proceeding.

On December 18, 1992, Karen Palmer, the wife of Edward L. Palmer, filed claims on her own behalf and as the proposed administratrix of her husband's estate. Those claims allege damages to herself, the decedent and the boat totalling $5,000,000. The pleading contains a demand for a jury trial. On January 8, 1993, Jennie S. Palmer, the wife of James Edward Palmer, filed a claim as administratrix of her husband's estate and James J. Palmer filed a claim on his own

behalf. Those claims allege damages to the decedent and James J. Palmer totalling $40,000,000. The pleading does not contain a demand for jury trial.

On February 25, 1994, Jennie S. Palmer, on her own behalf and as administratrix of her husband's estate, and James J. Palmer filed suit against Lone Star and the Estate of Edward L. Palmer in New York State Supreme Court. On July 21, 1994, Karen Palmer, on her own behalf and as Administratrix of the Estate of Edward L. Palmer, filed suit in New York State Supreme Court against Lone Star and the captain and helmsman of the tug.

In response, Lone Star filed an action seeking exoneration or limitation of liability in this Court on September 9, 1994. The case was designated as related to the limitation action previously filed by Great Lakes. This Court entered an Order on September 21, 1994, approving Lone Star's stipulation of the value of the barges and their cargo as $990,000, staying the state actions, and enjoining the filing of any further suits outside of the limitation proceeding.

On November 9, 1994, Karen Palmer filed claims against Lone Star that are identical to those she filed against Great Lakes. Her pleading again includes a demand for a jury trial. On November 10, 1994, Jennie S. and James J. Palmer also filed claims against Lone Star that are identical to those they filed against Great Lakes, with an additional claim by Jennie S. Palmer on her own behalf. Their pleading does not include a demand for a jury trial.

Great Lakes is a Delaware corporation with its principal place of business in Illinois. Lone Star Industries, Inc. is a Delaware corporation with its principal place of business in Connecticut. New York Trap Rock, Inc., the division of Lone Star Industries that owns or charters the barges involved in the collision, is a Delaware corporation with its principal place of business in New York.[2] All

---

1. The claimants are Karen Palmer, on her own behalf and as Administratrix of the Estate to Edward L. Palmer, Jennie S. Palmer, on her own behalf and as Administratrix of the Estate of James Edward Palmer, and James J. Palmer.

2. This information is taken from *Plaintiffs' Memorandum of Law in Opposition to Claimants' Application for Jury Trials,* at 3 & n. 1. The citizenship of the various entities is not alleged in any of the pleadings filed in these cases. Plaintiffs have offered to produce affidavits of corporate

of the claimants and the deceased individuals are or were residents of New York.

Both of the limitation actions were before Judge Vincent L. Broderick until his death, although they were never formally consolidated. The *Great Lakes* action was transferred to us on March 22, 1995. We held a conference with the parties on April 12, 1995, at which we granted permission for the parties to brief the issue of whether the claimants are entitled to a jury trial of their respective claims. At that time, we were informed of the existence of the related *Lone Star* action, which was subsequently transferred to us on April 26, 1995.

## B. Legal Background

The Limitation of Liability Act (the "Limitation Act"), 46 U.S.C.App. §§ 181–89, provides that:

> The liability of the owner of any vessel, ... for any loss, damage, or injury by collision ... done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C.App. § 183(a). The Second Circuit has described the primary purpose of the Limitation Act as "provid[ing] a marshalling of assets [and] the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." *In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir.1988).

■ A vessel owner faced with potentially large liability arising from a collision may apply to the district court for a determination of whether exoneration or limitation is appropriate. *See* Fed.R.Civ.P. Supplemental Rule F. Once the limitation action has been filed, the district court "shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Fed.R.Civ.P. Supplemental Rule F(3). All potential claimants must then file their claims against the shipowner in the limitation action.

■ Sitting in admiralty, the district court then conducts a proceeding, known as the "concursus," in which it inquires as to whether there was negligence and, if so, whether it was without the privity or knowledge of the vessel owner. If limitation is granted, the district court then determines how the limitation fund should be distributed. *See Dammers*, 836 F.2d at 755. If limitation is denied, the district court may dissolve the injunction against other proceedings, permitting suits to go forward against the vessel owner in other fora. *See Red Star Towing & Transp. Co. v. The Ming Giant*, 552 F.Supp. 367, 371 (S.D.N.Y.1982).

■ Because there is no right to a jury trial in actions instituted in admiralty, *see Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963); *Dammers*, 836 F.2d at 755; *see also* Fed.R.Civ.P. 38(e), and because the claimants are enjoined from proceeding in other fora once a limitation action is commenced, this procedure necessarily denies claimants their right to pursue their claims before a jury. *Dammers*, 836 F.2d at 755; *see also In re Complaint of Poling Transp. Corp.*, 776 F.Supp. 779, 782 (S.D.N.Y.1991). This result is, however, in direct conflict with 28 U.S.C. § 1333, under which the court has jurisdiction over the limitation action. *See Dammers*, 836 F.2d at 755; *Poling*, 776 F.Supp. at 782. That section provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

As the leading treatise on admiralty law has explained, the so-called "saving to suitors" clause means that:

> Where the suit is *in personam*, it may be brought *either* in federal court under the admiralty jurisdiction ... *or*, under the saving clause, in an appropriate nonmari-

---

citizenship if necessary, *see id.* Claimants do not dispute the accuracy of plaintiffs' statements, and we will accept them as true unless contrary information is brought to our attention.

time court, by ordinary civil action.... The privilege of prosecuting maritime causes of action in nonadmiralty courts, conferred by the "saving to suitors" clause, has always been of particular importance in personal injury and death actions in which the plaintiffs prefer to have the damages assessed by a jury.

Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* §§ 1–13, 6–62 (2d ed. 1975).

Courts have long wrestled with the conflict between the saving to suitors clause, which reflects the value placed on preserving a party's right to sue in the forum and under the procedure of her choice, and the deeply rooted tradition of non-jury trials in admiralty cases. In the context of limitation actions, the conflict becomes especially acute because the choice of forum and procedure is the vessel owner's. Once the vessel owner chooses to commence a limitation action, and the district court stays or enjoins all other suits, the claimant must proceed in admiralty rather than bringing a federal civil suit or an action in state court, with the attendant benefit of trying her claims to a jury. If the tradition of non-jury proceedings is adhered to rigorously in limitation actions, injured parties may be prevented from presenting their claims to a jury. This state of affairs would be especially troubling for claimants with wrongful death or personal injury claims, who in most other instances would take advantage of the saving to suitors clause to present these claims to a jury.

As one oft-quoted court has explained, however, the Limitation Act was intended to be a shield for vessel owners rather than a sword. *See In re Complaint of Cameron Boat Rentals, Inc.*, 683 F.Supp. 577, 582 n. 6 (W.D.La.1988). Moreover, the Supreme Court has enunciated the fundamental principle that "[w]hile this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases." *Fitzgerald*, 374 U.S. at 20, 83 S.Ct. at 1650. Citing *Fitzgerald*, a number of courts have issued decisions that permit trial by jury of some or all of the issues in a limitation action. *See, e.g., Poling*, 776 F.Supp. at 785–86; *In re Complaint of Berkley Curtis Bay Co.*, 569 F.Supp. 1491, 1493–95 (S.D.N.Y.), *aff'd sub nom., B.C. Bay Co. v. American Dredging Co.*, 742 F.2d 1431 (2d Cir.1983), *cert. denied*, 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984); *Ming Giant*, 552 F.Supp. at 370–72.

## DISCUSSION

Claimants have filed an application seeking either a jury trial on all of the issues in the *Great Lakes* action or a bench trial of the limitation issues and a jury trial of their claims. Great Lakes and Lone Star have filed a joint memorandum requesting a bench trial of all of the issues in both limitation actions. The issue we must address is whether it is possible, in the cases presently before us, to preserve the claimants' access to a jury trial while also guaranteeing to the vessel owners the protection to which they are entitled under the Limitation Act. However, before we apply the principles enunciated above to the question of which issues, if any, in these limitations actions should be tried to a jury, we must resolve several threshold matters.

### A. Threshold Issues

#### 1. Consolidation and Consideration of *Lone Star* Issues

Plaintiffs have requested that we consolidate the *Great Lakes* and *Lone Star* limitation actions and have filed a joint memorandum addressing the jury trial issues in both cases. Claimants do not directly oppose consolidation. Instead, they argue that, at the April 12 conference, we directed briefing of the jury trial question only in the *Great Lakes* action, and that plaintiffs' attempt to raise issues relevant to the *Lone Star* proceeding are improper. Technically, the claimants are correct because only the *Great Lakes* matter was on our docket at that time. At the conference, however, the parties indicated to the court that the *Lone Star* matter should also be before us because of its relationship to the *Great Lakes* action. The court and counsel agreed that the actions

should be tried together. Shortly thereafter, the *Lone Star* matter was transferred to us.

At this time, we order the consolidation of these limitation proceedings for all purposes, including trial. Consolidation is appropriate because both of these limitation actions and all of the claims filed therein arise from the same collision, involve the same claimants, and raise similar issues of fact and law.

Our action in this respect does not prejudice claimants. It is apparent from their memoranda that claimants are reluctant to endorse consolidation because a large portion of their argument in favor of a jury trial on their claims against Great Lakes is based on the existence of diversity as an independent basis of jurisdiction over those claims. No diversity of citizenship exists between the claimants, who are all residents of New York, and New York Trap Rock Corp., which has its principal place of business in New York. Claimants apparently fear that consolidation of these actions would deprive their claims against Great Lakes of an independent jurisdictional basis because it would destroy complete diversity among the parties. Their fears are unfounded. Consolidation of the *Lone Star* action with the *Great Lakes* action does not change the fact that, under the saving to suitors clause, the claims filed against Great Lakes could have been brought separately in federal court based on diversity while the claims against Lone Star could have been brought separately in state court. Our analysis of claimants' right to a jury trial of their claims will be the same whether or not the limitation actions are consolidated.

■ Having decided that we will consolidate the limitation actions for all purposes, we must now decide whether it is appropriate to address the jury trial issues for both actions at this time. Great Lakes and Lone Star suggest that we take this eminently sensible course. Concern for judicial economy certainly counsels that we do so, rather than directing the parties to submit briefs on a formal motion in the *Lone Star* case. The claimants are represented by the same counsel in each action, and the legal issues relevant to these motions are quite similar. Under these circumstances, we would undoubtedly be presented with many of the same

arguments in resolving a motion for jury trial in the *Lone Star* action. Requiring a second motion would be needlessly inefficient.

Furthermore, to the extent that the claimants have different arguments to present concerning the availability of a jury trial for the claims against Lone Star, they have already stated those arguments. Claimants have included a section in their memorandum that argues that they should receive a jury trial of their claims against Great Lakes even if diversity is destroyed. *See Brief in Support of Trial by Jury on Behalf of Karen Palmer and the Estate of Edward L. Palmer,* at 22–25. That lack of diversity is precisely the situation presented by the claims against Lone Star. Hence, claimants have not been deprived of an opportunity to put forth their arguments. Moreover, claimants will benefit from the prompt and efficient resolution of these issues. Accordingly, this opinion will address the issues presented by claimants' request for a jury trial in the context of both proceedings.

### 2. Failure of Certain Claimants to Request Jury Trial

■ Plaintiffs argue that because Jennie S. and James J. Palmer's pleadings do not contain timely jury demands, we should not order any of their claims tried to a jury. Under Fed.R.Civ.P. 38(b), a party may request a jury trial of any issue triable of right by a jury by serving a demand in writing no later than 10 days after the service of the last pleading directed to that issue. If a party does not file a demand in a timely fashion, that failure constitutes a waiver by that party of trial by jury. *See* Fed.R.Civ.P. 38(d). Jennie S. and James J. Palmer do not dispute that they did not file a jury demand within ten days after the service of the last pleading directed to their claims in either the *Great Lakes* or the *Lone Star* action. Plaintiffs therefore argue that Jennie S. and James J. Palmer have waived any right they may have had to receive a jury trial of their claims. We are not persuaded.

None of the parties disputes that the claims filed by Karen Palmer in both the *Great Lakes* and the *Lone Star* actions con-

tained timely demands for jury trial indorsed on the pleadings. Likewise, there is no dispute that, in each proceeding, the claims brought by Karen Palmer were filed before Jennie S. and James J. Palmer filed their claims. Therefore, to the extent that the issues raised by Jennie S. and James J. Palmer's claims were embraced in the claims filed by Karen Palmer, Jennie S. and James J. Palmer were entitled to rely on Karen Palmer's timely demand for a jury trial. *See* 5 James W. Moore, *Moore's Federal Practice* ¶ 38.45, at 38–419 to –420 (2d ed. 1995) ("[I]f a timely and proper demand for jury is made, all other parties in the action who are affected by the demand may rely thereon and need not make a jury demand for issues embraced therein."). Upon examination, it is evident that the claims filed by Jennie S. and James J. Palmer are virtually identical to the claims filed by Karen Palmer. Each of the claims alleges that the plaintiffs' negligence and the unseaworthiness of the plaintiffs' vessels caused the accident that resulted in the death or serious personal injury of each of the claimants. Therefore, all of the issues presented by the claims filed by Jennie S. and James J. Palmer, other than the extent of their respective injuries, are embraced by the jury demand made by Karen Palmer.

Furthermore, judicial economy counsels that if the claims filed by Karen Palmer are such that she is entitled to a jury trial, the claims brought by Jennie S. and James J. Palmer should go to the same jury. It seems likely that the parties will present almost exactly the same evidence with respect to each of the claims against the respective vessel owners. It would be needlessly duplicative, and would create the risk of inconsistent verdicts, for the jury and the court to weigh the same evidence separately. Moreover, if limitation is appropriate, all of the claimants will be seeking relief from a finite common fund and fairness to all requires that their respective damages be assessed by the same trier of fact. Therefore, to the extent that the claims filed by Jennie S. and James J. Palmer raise any issues not embraced by the jury demand filed by Karen Palmer, we will exercise our discretion under Fed.R.Civ.P. 39(b) to excuse their failure to file a timely demand for a jury. For the purposes of this application, therefore, Jennie S. and James J. Palmer will be treated as if they had filed a timely jury demand.

### 3. Effect of Admiralty Jurisdiction Over Limitation Action

■ Both Great Lakes and Lone Star assert that their actions for limitation or exoneration of liability are within the admiralty jurisdiction of the court and that Fed. R.Civ.P. 38(e) provides that the Federal Rules of Civil Procedure "shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)." [3] Plaintiffs argue that the conjunction of these facts conclusively establishes that both the limitation issues and the Palmers' claims should be tried to the court without a jury.

Plaintiffs have overstated their case. While it is undeniable that, under Rule 38(e), parties have no right to a jury trial on matters within the admiralty jurisdiction of the court, it is equally undeniable that parties have no right to a non-jury trial on all of the issues in an admiralty case if considerations require otherwise. *See Fitzgerald,* 374 U.S. at 20, 83 S.Ct. at 1650. In this regard, we find the reasoning of *In re Poling* instructive. In *Poling,* the plaintiffs had brought a limitation action and had designated it as within the court's admiralty jurisdiction under Rule 9(h). *See Poling,* 776 F.Supp. at 780. The court described the conflict between the Limitation Act and the saving to suitors clause, and held that it could further the purposes of

---

**3.** Plaintiffs rely heavily on their designation of their cases in the pleadings, pursuant to Fed. R.Civ.P. 9(h), as within the admiralty jurisdiction of the court. Those designations are redundant, as an action for limitation or exoneration of liability may only be brought under the federal court's admiralty jurisdiction. *See Ex parte Green,* 286 U.S. 437, 439–40, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932); Fed.R.Civ.P. 9(h) ("If the case is cognizable only in admiralty, it is an admiralty claim or maritime claim ... whether so identified or not."). Therefore, the cases that Great Lakes and Lone Star cite discussing the effect of a Rule 9(h) designation on a plaintiff's right to jury trial in cases that could have been brought under some other basis of jurisdiction are inapposite.

both by holding a bench trial on the limitations issues and empaneling a jury that would decide any remaining state law issues presented by the claims filed in that proceeding. *See Poling*, 776 F.Supp. at 781, 785–86. The court stated, " 'As long as the admiralty court can effectively ensure that a shipowner will not face liability in excess of the limitation fund,' no compelling reason can be presented for denying [claimants] a jury on their common law claims...." *Id.*, at 786 (quoting *Dammers*, 836 F.2d at 759).

We agree with the *Poling* court. The limitation device was not intended to be an offensive weapon for vessel owners. *See Cameron*, 683 F.Supp. at 582 n. 6. Merely because Great Lakes and Lone Star brought limitation actions within the admiralty jurisdiction of the court does not mean that they may use that procedure to strip the claimants of a jury trial to which the claimants would otherwise be entitled under the saving to suitors clause. *See Poling*, 776 F.Supp. at 786. The issues presented here may not be disposed of as easily as plaintiffs contend.

## B. Availability of Jury Trial for Claims

### 1. *Great Lakes* Limitation Action

At least as to the *Great Lakes* action, we can answer with assurance that the claimants are entitled to a jury trial of their claims. As the *Poling* court stated, "[C]ourts ... have held that where a claim with *independent jurisdictional* basis normally carrying a jury right is joined with admiralty claims arising out of the same transaction or occurrence, at least the nonadmiralty claim may be tried to the jury." *Id.*, at 783. This result is driven by the need to preserve where possible the right to jury trial on claims that, but for the commencement of a limitation proceeding, could be brought elsewhere under the saving to suitors clause.

In this case, the parties do not dispute that, if this Court had not enjoined suits outside the limitation proceeding, the claimants could have brought their claims against Great Lakes in a federal civil action based on diversity of citizenship. Therefore, because an independent jurisdictional basis exists for the claims against Great Lakes, the claimants are entitled to try those claims to a jury.

Plaintiffs point out that the *Great Lakes* claimants did not allege diversity in their pleadings in this action. While the claimants would certainly have been wiser to plead diversity when they filed their claims, under Fed.R.Civ.P. 15, we may permit a party to amend its pleadings at any time. That leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Furthermore, "[i]t is well settled that, pursuant to 28 U.S.C. § 1653, the court may allow amendments of the pleadings to cure defective allegations of jurisdiction." *Johnson Prods. Co. v. M/V La Molinera*, 619 F.Supp. 764, 767 (S.D.N.Y.1985). Accordingly, we grant claimants leave to amend their pleadings to allege facts that would give rise to diversity jurisdiction.

### 2. *Lone Star* Limitation Action

The question of whether the claimants are entitled to present their claims against Lone Star to the jury is more troublesome. There is no independent basis for jurisdiction over the claims filed against Lone Star, because diversity is lacking and the claims are not brought under a federal statute. It is appropriate, however, for us to take supplemental jurisdiction over the claims because the claims against Lone Star are so related to the limitation action "that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (codifying pre–1990 case law on pendent and ancillary jurisdiction); *Poling*, 776 F.Supp. at 781. Hence, we must decide whether the claimants are entitled to a jury trial of their claims in the *Lone Star* action on the basis of supplemental jurisdiction. In evaluating this issue, we are guided by three considerations: 1) the admiralty tradition disfavoring the use of a jury in limitation proceedings, 2) the preservation of the claimants' rights under the saving to suitors clause, and 3) judicial economy. *See id.*, at 785.

Authority is split, or at least ambiguous, on this question. Compare, *e.g., Weeks v. Reliance Ins. Co.*, 1985 WL 462, at *2 (S.D.N.Y. Mar. 28, 1985) (Haight, J.) with *Poling*, 776 F.Supp. at 785–86. In *Weeks*, following

storm damage to a yacht, the vessel owners sued their insurance company in admiralty for the cost of repairs and added a state law claim against their insurance broker for negligent failure to procure insurance. Judge Haight ruled that the court had pendent jurisdiction over the claim against the broker, but that "this admiralty action on a policy of marine insurance, coupled with a pendent common law claim of no independent federal jurisdictional basis, carries with it no right to trial by jury." *Weeks,* 1985 WL 462, at *3.

By contrast, in *Poling,* the court found that it had pendent jurisdiction over the claimants' state law claims, *see Poling,* 776 F.Supp. at 781, and that the claimants were entitled to a jury trial on the issues raised by those claims. The court first noted that the Supreme Court has not answered the question of whether the saving to suitors clause preserves a right to a jury trial on a pendent claim. *See Poling,* 776 F.Supp. at 785 (citing 5 James W. Moore, *Moore's Federal Practice* ¶ 38.35[4], at 38–320 (2d ed. 1995)). The court then reasoned that the Supreme Court has explicitly stated that there is no right to a non-jury trial in admiralty proceedings, *see id.,* at 786 (citing *Fitzgerald,* 374 U.S. at 20, 83 S.Ct. at 1650), and that as long as the court can ensure that the vessel owner does not face liability in excess of the limitation fund, there is no reason to deny the claimants a jury trial on claims that they could have brought elsewhere if the vessel owner had not commenced a limitation proceeding. *See id.*

The *Poling* court also argued that considerations of judicial economy weighed heavily in favor of trying the pendent claims to a jury in federal court. Because of the complexity of the case and the number of parties involved, a full-blown trial would be necessary merely to resolve the limitation issues. Therefore, the most sensible and efficient process would be to empanel a jury to hear the evidence at the same time that the court determined the limitation issues[4] and to submit the remaining issues to the jury. The court pointed out the inefficiency that could result if it held a lengthy limitation action only to deny the vessel owner's request for limitation, leaving the parties to present the same evidence over again in state court. *See id.*

We are persuaded that *Poling* is the more apposite case for our purposes.[5] First, *Poling* is factually more similar to the *Lone Star* limitation proceeding. *Poling* was a limitation proceeding in which several claimants filed personal injury claims, whereas *Weeks* was not a limitation action and was exclusively concerned with matters relating to the vessel owners' marine insurance policy, as it applied to property damage to the vessel. Indeed, in discussing its decision not to send the pendent state claim to the jury, the *Weeks* court noted that "[t]he case at bar involves neither death nor personal injury," *see Weeks,* 1985 WL 462, at *3.

4. The claimants in *Poling* conceded that the issues relating to limitation should be tried to the court without a jury. *See Poling,* 776 F.Supp. at 781 n. 2.

5. Plaintiffs attempt to distinguish *Poling* by pointing out that the pendent claims in that case were based on damage that occurred when a shore-based petroleum tank exploded after a cargo of gasoline was unloaded from a vessel. Those claims were therefore governed by state substantive law. Plaintiffs argue that because the wrongful death and personal injury claims brought by claimants here are governed by general federal maritime substantive law, the claimants have no right to a jury trial of their claims. Claimants concede that their wrongful death and personal injury claims are governed by federal maritime substantive law. *See Reply Brief Submitted on Behalf of Karen Palmer and the Estate of Edward L. Palmer,* at 5–6. They contend, however, that this fact has no bearing on whether they should receive a jury trial of their claims in the *Lone Star* proceeding. We agree.

Personal injury and wrongful death claims governed by federal maritime substantive law are regularly brought in federal civil actions and in state court. Plaintiffs cannot seriously contend that, in the absence of a limitation action, claimants could not receive a jury trial of their claims against Lone Star in state court. Therefore, although the *Poling* decision concerned claims that, but for the limitation proceeding, could have been brought in state court before a jury under state substantive law while this case concerns claims that could have been brought in state court before a jury under federal maritime substantive law, that distinction makes no difference to our analysis.

This distinction is relevant because courts are demonstrably more willing to circumscribe the admiralty tradition of non-jury trials where parties seek to put claims based on death or personal injury before a jury. Numerous courts and statutes have accorded special weight to a deceased or injured party's right to a jury trial. *See, e.g.,* 46 U.S.C.App. § 688 (right to jury for claims brought by injured seamen under Jones Act); *Fitzgerald,* 374 U.S. at 21, 83 S.Ct. at 1650 (sending admiralty claim arising out of same facts as Jones Act claim to the jury); *Ming Giant,* 552 F.Supp. at 371, 374 (sending Death on High Seas Act claim, along with all other issues including limitation, to jury because of, *inter alia,* "the relative weight and importance of the death claim as compared to other claims at issue in the limitation proceeding").

Furthermore, considerations of judicial economy weigh in favor of trying the claims filed in the *Lone Star* limitation action to a jury. It is by far the most sensible and economic course to try the *Great Lakes* and *Lone Star* limitation actions together, as both actions arise from the collision between Edward Palmer's pleasure boat and the tug and barges owned respectively by Great Lakes and Lone Star. The claims filed in the *Great Lakes* proceeding will be tried to a jury. Those claims arise from exactly the same factual circumstances, and raise the same legal issues, as the claims in the *Lone Star* case. The jury would therefore weigh the same evidence in reaching a verdict on the claims in both actions. Accordingly, there is certainly no inefficiency in permitting claimants to try their claims against Lone Star to the jury. Indeed, if we do not permit the claimants to try those claims to the jury, we run the risk that the court and the jury will reach inconsistent verdicts on claims brought by the same claimants and arising from the same events. For all of these reasons, the wiser course is to permit claimants to try their claims against Lone Star to the jury.

## C. Division of Issues Between Court and Jury

█ Of course, the question remains which issues in these two actions will be decided by the court and which will be submitted to the jury. Claimants argue that there is no reason, if they are entitled to a jury trial on their claims, why the limitation issues should not also be presented to a jury. They contend that, under *Fitzgerald,* plaintiffs have no right to a non-jury trial and that concerns of judicial efficiency dictate that one factfinder should determine all of the issues in these proceedings. Plaintiffs counter that it is unquestionably the province of the court, sitting in admiralty without a jury, to determine the issues related to limitation.

There is some division of opinion among courts as to whether the limitation issues may be presented to the jury or must be decided by the court. *Compare, e.g., Ming Giant,* 552 F.Supp. at 371–72 (limitation issues and claims for jury) *with Poling,* 776 F.Supp. at 781, 785–86 (limitation issues for court; jury trial of claims); *Berkley,* 569 F.Supp. at 1494 (same); *cf. Weeks,* 1985 WL 462, at *3 (*dictum* questioning *Ming Giant* ruling). We believe that the courts that have held that the limitation issues should be decided without a jury have the better of the debate.

Although a party in an admiralty proceeding has no right to a non-jury trial of all of the issues in the proceeding, *see Fitzgerald,* 374 U.S. at 20, 83 S.Ct. at 1650, the tradition of non-jury trials in admiralty actions is long and deeply ingrained. *See Romero v. International Terminal Operating Co.,* 358 U.S. 354, 369, 79 S.Ct. 468, 478, 3 L.Ed.2d 368 (1959). The limitation action is a quintessential admiralty proceeding, customarily conducted without a jury. *See Dammers,* 836 F.2d at 755. The Second Circuit has stated that it is only through a non-jury proceeding to determine limitation issues that the primary purpose of the Limitation Act to marshal and distribute fairly an inadequate fund may be served. *See id.*

Under these circumstances, we see no reason to grant claimants' request for a jury trial of the limitation issues. The tradition of non-jury trials in admiralty and the saving to suitors clause exist in an uneasy balance; granting claimants' request would tip the scales too far in favor of the use of jury trials in admiralty proceedings. Just as Great

Lakes and Lone Star may not force claimants to forego placing their claims before a jury by bringing a limitation action, claimants may not invoke the saving to suitors clause to force the vessel owners to place their limitation claims before a jury. Accordingly, at trial, we will determine, without the help of the jury, the issues relating to limitation or exoneration. Therefore, we will decide whether there was negligence and, if so, whether it occurred within the privity or knowledge of either or both plaintiffs. Our decision on those issues will be given the appropriate preclusive effect. *See Poling,* 776 F.Supp. at 786.

■ We will then submit the remaining issues to the jury, including the issue of damages. If the court has determined that both plaintiffs were negligent, we will also assign to the jury the task of apportioning fault among the parties. There are some indications that apportionment is usually a task for the court in a limitation proceeding. *See Dammers,* 836 F.2d at 755 (purpose of limitation is to marshal *and distribute fairly* an inadequate fund (emphasis added)); *Berkley,* 569 F.Supp. at 1493–94 (court denied limitation and allocated 65% of fault collectively to two plaintiffs in limitation action and 35% to non-party). Nevertheless, juries are particularly suited to resolving questions of damages and are certainly as capable as we are of allocating fault among vessel owners. Indeed, the *Berkley* court stated that a jury trial is:

> especially appropriate where, as here, the complex issues of limitation and apportionment [between plaintiffs in limitation action and non-party] had already been decided and all that remained was the issue of damages, which jurors are well suited to decide. Furthermore, the damage claims at issue involved an apportionment of liability among the [two vessel owners who petitioned unsuccessfully for limitation], so they could not have been conveniently severed for trial to separate factfinders or

> tried simultaneously to two factfinders with likelihood of different verdicts.

*Berkley,* 569 F.Supp. at 1494–95.

In this case, we are faced with multiple claims, multiple claimants, and multiple vessel owners. If the court were to decide the apportionment issue while the jury decided damages, the danger of an inconsistent verdict would be great. Therefore, after giving appropriate preclusive effect to the court's findings regarding the negligence or lack thereof of each of the vessel owners, we will submit to the jury the issues of what damages, if any, each claimant is entitled to recover and how fault should be apportioned among the parties.

■ Finally, judicial economy concerns suggest that we hold the court proceedings on the limitation issues and the jury trial on the claims simultaneously. In a multi-party action such as this one, the court will have to conduct an extensive proceeding in order to determine whether either or both defendants are entitled exoneration or limitation. The evidence presented by the parties on the limitation issues will in most respects be the same as the evidence presented on the claims filed by the Palmers. The most efficient course of action, therefore, is to empanel a jury and conduct simultaneous trials of the limitation issues and the claims.[6] At the close of trial, the court will decide whether limitation is appropriate for either plaintiff and the jury will render a verdict on the remaining issues.

### CONCLUSION

For the foregoing reasons, we order that: 1) the above-captioned actions be consolidated for all purposes, 2) claimants may amend the pleadings in their claims against *Great Lakes* to allege facts that would indicate diversity within fifteen days of the date of this opinion, 3) the court will conduct a bench trial to determine the issues relating to whether plaintiffs are entitled to limitation or exoneration, and 4) simultaneously, a jury

---

6. We note that we may retain jurisdiction over the claims even if we deny limitation. *See Hartford Accident & Indemnity Co. v. Southern Pacific* *Co.,* 273 U.S. 207, 217–18, 47 S.Ct. 357, 360, 71 L.Ed. 612 (1927); *Berkley,* 569 F.Supp. at 1493.

will be empaneled and will decide the remaining issues, if any.

**SO ORDERED.**