JEFFERSON BARRACKS MARINE SERVICE, INC., charterer and owner pro hac vice of the M/V Walter E. Blessey, and Richard Wilson and Walter E. Blessey, owners of the M/V Walter E. Blessey, in an action for exoneration from and/or limitation of liability, Appellees,

v.

Thomas J. CASEY, the Personal Representative of the Estate of Richard D. Saal, Jean L. Saal, the alleged common law and de facto wife of Richard D. Saal, Jean L. Saal, the Guardian of Richard F. Saal—the minor child of Richard D. Saal, and Patricia Groller, Doris Buchert and Rhonda Jo Saal, the adult children of Richard D. Saal, Appellants.

No. 85–1068.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1985.

Decided June 6, 1985.

Barbara W. Wallace, St. Louis, Mo., for appellants.

Raymond Massey, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and WOODS,* District Judge.

HENRY WOODS, District Judge.

## I. BACKGROUND

On October 2, 1983 the M/V WALTER E. BLESSEY, a towboat handling fifteen barges on the upper Mississippi River struck a pleasure craft with four aboard, including appellants' decedent, Richard D. Saal. Saal and one other passenger, Harold Byington, Jr., were drowned. Byington's father filed suit for wrongful death in the Circuit Court of Madison County, Illinois. Jean L. Saal, in her individual capacity as widow and as guardian of Richard F. Saal, the decedent's minor son, filed a wrongful death action in the Circuit Court of St. Louis County against the owners and Jefferson Barracks Marine Service, Inc., the charterer of the M/V WALTER E. BLESSEY. Thereafter, Patricia Groller, Doris Buchert and Rhonda Jo Saal, the adult children of Richard D. Saal, sought leave to intervene in the St. Louis County action to assert wrongful death claims.

On March 28, 1984, appellees Jefferson Barracks Marine Service, Inc., and the owners of the vessel filed a limitations of liability proceeding in the United States District Court for the Eastern District of Missouri, pursuant to 46 U.S.C. § 183. This Act provides that the liability of the owner of any vessel for damages occasioned or incurred without the privity or knowledge of the owner shall not exceed the value of his interest in the vessel and her freight then pending. Along with their complaint, appellees filed a stipulation of value in which they attested that the value of the vessel and freight was $1,001,970.84. At the same time they obtained an injunction pro-

hibiting all claimants "from the prosecution of any action against plaintiffs on the M/V WALTER E. BLESSEY, arising out of the alleged accident ... other than by filing claims in these proceedings." A June 15, 1984, deadline was fixed for the filing of claims. The three adult children, the minor child, and the widow of Richard Saal, named above, all filed claims along with the personal representative of the estate. The father of Harold Byington also filed a claim, subsequently settled for $87,500, leaving a balance in the limitation fund of ($914,470.84).

The appellants, who are the Saal claimants, on October 18, 1984 filed a motion to dissolve the injunction to permit them to proceed with the St. Louis County wrongful death action. At the same time the claimants stipulated that the amount of any recovery would be limited to the amount remaining in the limitation fund, and that the U.S. District Court would retain jurisdiction of all limitation issues. The district judge denied the motion to dissolve the injunction: "Due to the conflicting views as to the identities of Richard D. Saals' wives and children, and consequently, the obvious uncertainty that exists as to future claimants, dissolution of the injunction would be improper. It would make plaintiffs amenable to additional claims in state court, consequently prejudicing their right to limit liability." (Memorandum Opinion of District Judge, A–1). In their interlocutory appeal the Saal claimants challenge the district court's right to bar them from the Circuit Court of St. Louis County, which forum they have chosen under the "saving to suitors" clause of the Judiciary Act of 1789, 28 U.S.C. § 1333.

The injunction issued by the District Judge was predicated on decedent's rather tangled marital history. He was concerned because decedent had been married four times before contracting a common law marriage to Jean L. Saal. The record

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

clearly shows that Saal first married Gladys Saal, nee Tinker, in 1950 and had two children by her, Patricia Groller and Doris Buchert, both of whom are adult claimants herein. The latter two testified that their mother divorced Saal in 1957. He then married Brenda Saal, divorced her and in 1960 married Jackie Dempsey, who is the mother of Rhonda Jo Saal, another claimant in these proceedings. The marriage to Jackie Dempsey ended in divorce in 1962, and Saal then married Bonnie Delaney, the sister of his first wife. Bonnie Delaney Saal has been dead for five years. There were no children born to either Brenda Saal or Bonnie Saal. After divorcing Bonnie Delaney Saal, Richard Saal entered into a common-law relationship with Jean L. Saal in Texas, a jurisdiction which recognizes common-law marriages. A minor child, Richard F. Saal, survives from that relationship, which existed at the time of the fatal collision. Both the minor and his mother are claimants herein.

The above marital history is established by one or more family members. There are disputes among the claimants themselves about certain aspects of the family history. For instance, the children of Gladys Saal question whether Rhonda Jo Saal and Richard F. Saal are actually the children of the decedent. Jean Saal, the last of decedent's five wives, is hazy about his early marital history, which is understandable. She questions whether Rhonda Jo Saal is his daughter but does not question that he was married to Jackie Saal, who is Rhonda Jo's mother. "Jean Saal claims that she is the common-law wife of decedent Richard D. Saal. Prior to this relationship, Richard D. Saal had been married four times. Jean Saal denies that Rhonda Jo Saal is the daughter of Richard D. Saal; however, Rhonda Jo Saal claims that she is the daughter of Richard D. Saal by one of his previous wives. Doris Buchert testified that she did not know whether Richard F. Saal was Richard D. Saal's son, and Patricia Groller testified that he was not." (Memorandum Opinion of District Judge, A–3). These disputes, however, are between parties who are before the state and federal courts. The state court can sort out these conflicting claims as well as a federal court. Appellees' argument is based on these interparty disputes. We fail to see how these conflicts would invite the appearance of some phantom claimant whose claim might exhaust the limitation fund. No such phantom claimant has been definitively identified in the testimony. We believe the possibility of some additional claimant appearing in these proceedings is extremely remote and that the district court erred in enjoining the state court action.

## II. THE APPLICABLE SUPREME COURT DECISION

▮ The conflict between the Limitation of Liability Act, 46 U.S.C. § 183, and the "saving to suitors" clause, 28 U.S.C. § 1333, has been troublesome for the courts. When the aggregate of all multiple claims will not exhaust the available limitation fund, the district court will not enjoin the prosecution of claims in other courts. If multiple claims exceed the amount of the fund, then other proceedings will be enjoined. What if the amount of the claims exceed the fund but the parties stipulate that they will not enter judgment in any court for more than the amount of the Limitation Fund? In *Lake Tankers Corporation v. Henn*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957) the Supreme Court held that such a stipulation must be accepted and the injunction dissolved since "the respondent must not be thwarted in her attempt to employ her common law remedy in the state court where she may obtain trial by jury." *Id.* at 153, 77 S.Ct. at 1273. Justice Clark, writing for the majority reasoned as follows:

The state proceeding could have no possible effect on the petitioner's claim for limited liability in the admiralty court and the provisions of the Act, therefore, do not control. *Langnes v. Green*, 282 U.S. 531, 539–540 [51 S.Ct. 243, 246–247, 75 L.Ed. 520] (1931). It follows that there can be no reason why a shipowner, under such conditions, should be treated

any more favorably than an airline, bus, or railroad company. None of them can force a damage claimant to trial without a jury. They, too, must suffer a multiplicity of suits. Likewise, the shipowner, so long as his claim of limited liability is not jeopardized, is subject to all common-law remedies available against other parties in damage actions.

354 U.S. at 153, 77 S.Ct. at 1273.

 *Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931), cited by Justice Clark in the above quotation, involved a single claimant in contrast to multiple claimants. However, the Supreme Court had previously held that the Limitation Act applied in this situation, as well as in one involving multiple claims. *White v. Island Transportation Co.*, 233 U.S. 346, 34 S.Ct. 589, 58 L.Ed. 993 (1914). The value of the vessel in *Langnes v. Green, supra,* was $5,000, and Green's claim was for $25,000. The district court enjoined the state court proceeding and proceeded to try Green's claim. The Supreme Court, overruling *White v. Island Transportation Co., supra,* held that the district court should have allowed the state court action to proceed, "retaining as a matter of precaution, the petition for a limitation of liability to be dealt with in the possible but ... unlikely event that the right of petitioner to limited liability might be brought into question in the state court." 282 U.S. at 541, 51 S.Ct. at 247. Only in this way, said the Court, can the rights of both parties [i.e., under the Limitation Act and under the "saving to suitors" clause] be preserved.

The procedure that has been worked out for a single-claim plaintiff as a result of the decision in *Langnes v. Green, supra,* and a subsequent decision interpreting the mandate in *Ex parte Green*, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932) has been summarized in a leading admiralty text.[1] The state court plaintiff must comply with the following requirements:

a) file his claim in the limitation proceeding;

b) where a stipulation for value has been filed in lieu of the transfer of the ship to a trustee, concede the sufficiency in amount of the stipulation;

c) consent to waive any claim of *res judicata* relevant to the issue of limited liability based on any judgment obtained in the state court;

d) concede petitioner shipowner's right to litigate all issues relating to limitation in the limitation proceeding.

In their motion to dissolve the injunction, appellants stipulated as follows:

1. That if the District Court saw fit to dissolve its Order of Injunction, dated March 29, 1984, which prohibited Appellants from maintaining a direct action against Appellees in state court, Appellants would proceed as party-plaintiffs in the Circuit Court of St. Louis County, Missouri in Cause No. 897969 which had been filed prior to the issuance of the District Court's Order of Injunction.

2. That upon the dissolution of the Order of Injunction, the District Court sitting in admiralty would retain its exclusive jurisdiction over the issues of (1) Appellees' right to limit liability, (2) the proper value of the Limitation Fund, and (3) all matters affecting the right of Appellees to limit liability herein, and that any decision in the above described state court action would not be *res judicata* as to those issues should they in any manner be embraced by any such decision in state court.

3. That if Appellants obtained in the aggregate a verdict or judgment against Appellees, or any of them, in the Circuit Court of St. Louis County in excess of the difference of the amount of the Limitation Fund as was previously stipulated by Appellees less the amount agreed to be paid by Appellees to Harold Byington, Sr. as and for his claim, Appellants would consent to a remittitur so that

---

1. *See* Gilmore and Black, *The Law of Admiralty* (2d Ed. 1975), p. 871 and particularly cases cited in n. 84.

judgment would be entered in the aggregate equal to the difference between the amount of the Limitation Fund as originally stipulated by Appellees less the amount agreed to be paid by Appellees to Harold Byington, Sr.—each of the Appellants remitting in proportion to his or her respective loss—and that an injunction would issue restraining Appellants from exeucting thereon to the extent that any such judgment exceeded the amount remaining in the Limitation Fund.

The stipulation in our opinion met the requirements of *Lake Tankers Corporation v. Henn, supra,* and *Langnes v. Green, supra.* The effect of these cases and a stipulation such as entered here was thoroughly discussed in *Universal Towing Co. v. Barrale,* 595 F.2d 414 (8th Cir.1979). "In the case of either a single claim or of multiple claims that do not exceed, the limitation fund, however, the court's discretion is narrowly circumscribed. *The District Court must dissolve the injunction unless the owner can demonstrate that his right to limit liability would be prejudiced."* *Id.* at 420 (emphasis added). Here the owner has not made the required demonstration. His reliance on *Helena Marine Service, Inc. v. Sioux City and New Orleans Barge Lines, Inc.,* 564 F.2d 15 (8th Cir.1977) is misplaced. The facts of that case bear little relationship to those of the case at bar. It involved not a "phantom claimant" but one readily identified and poised in a position to assert at any time a claim that would exceed the limitation fund. *Lake Tankers. Corp. v. Henn, supra,* is factually and legally akin to the case under consideration.

## III. APPELLEES' OTHER CONTENTIONS

■ We are not impressed by appellees' argument that the state court proceeding deprives it of the use of Rule 14(c) of the Federal Rules of Civil Procedure. If claimants have a substantive right to pursue their cause of action under the "saving to suitors clause," it can hardly be abrogated by a federal procedural rule.[2] Apparently, appellees are claiming that by impleading Paul Luster and Richard Stiles, the pleasure boat survivors, under 14(c), and assigning fault to them, the towboat owner would be absolved of that proportion of fault. Appellees misapprehend the law. Any judgment in favor of claimants in the limitation proceeding would be joint and several. As the Supreme Court recently pointed out, the maritime rule "is in accord with the common law, which allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979). The towboat owner would only have the right of contribution from Stiles and Luster for any fault assigned to them. The towboat owner has the same rights under Missouri state law. It can implead Stiles and Luster and have the jury apportion fault for the purpose of contribution. *Missouri P.R. Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo.1978). The liability, however, in both forums is joint and several. That Stiles was defaulted in the limitation proceeding on January 31, 1985, cannot affect this proceeding which is an appeal from an order entered on December 20, 1984, with the notice of appeal filed on January 9, 1985. At any rate, we fail to see how claimant could lose a valuable statutory substantive right through the default of a third-party defendant.

The case is remanded to the district court with directions to dissolve the injunction and permit claimants to proceed with their action in the St. Louis state court. Pursuant to the stipulation, which we hold is binding on all the claimants, the district court shall retain its exclusive jurisdiction over the issues of (1) appellees' right to

---

2. *See* 28 U.S.C. § 2072 authorizing promulgation of the Federal Rules of Procedure. "Such rules shall not abridge, enlarge or modify any subs tantive right and shall preserve the right of trial by jury as at common law."