**In the Matter of GARVEY MARINE, INC., Owner of the M/V ANN–G, in an action for exoneration from and/or limitation of liability, Plaintiff.**

No. 95 C 3623.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1995.

Allan E. Lapidus, Vedder, Price, Kaufman & Kammholz, Chicago, IL, David L. Coffman, Andrew Rothschild, Lewis, Rice & Fingersh, St. Louis, MO, for plaintiff.

John Michael Steed, III, Neville, Pappas & Mahoney, Chicago, IL, for claimant.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

This court, sitting in admiralty, in a stay order dated June 21, 1995, enjoined any state court proceedings related to the alleged crash between plaintiff's vessel and tow and decedents' motorboat. Claimants are now before this court asking for the injunction to be dissolved. For the reasons set forth herein, claimants' motion is granted.

## BACKGROUND

Lawrence McGill, decedent, drowned on August 7, 1993, allegedly due to a collision between his speed boat and plaintiff's vessel (the M/V ANN–G) and its tow. Decedent's wife, Bettina McGill, filed a two-count action (wrongful death and survival) in state court on behalf of the decedent's estate, herself, her two adult children and one minor child.

Plaintiff[1] filed this complaint seeking exoneration from or limitation of liability pursuant to the Limitation of Vessel Owner's Liability Act, 46 U.S.C.A. §§ 181–196 (1958) (Limitation Act).[2] The Act provides that a shipowner's liability after a maritime accident, if incurred "without the privity or knowledge of such owner[,] ... shall not ...

exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C.A. § 183(a). To realize the benefits of this provision the shipowner must file with the district court security equal to the value of its interest in the ship and pending cargo. 46 U.S.C.A. § 185; Federal Rule of Civil Procedure, Supp. Rule F(1)–(2). Plaintiff stipulated the value of the boat and its tow at $177,410, which this court approved.

On the same date that the federal complaint was filed, this court, pursuant to 46 U.S.C.A. § 185 and Supp. Rule F(3), stayed any related state court proceedings pending resolution of the exoneration/limitation liability issue and ordered all potential claimants to present their claims in the exoneration/limitation proceeding.

The McGills filed their answer and claim in federal court, seeking $2 million in damages. On August 15, 1995, claimants motioned this court to modify the stay order. In support of their request, claimants have made the following stipulations:

(1) [T]he United States District Court has exclusive jurisdiction over all limitation of liability issues which arose out of an incident occurring on August 7, 1993 between the M/V ANN–G and a motorboat operated solely by Lawrence McGill.

(2) [Claimants] concede[ ] and agree[ ] to waive any claim of res judicata respecting any limitation of liability issues as might arise in the event of entry of judgment in [the state court case filed] or any case based upon the facts as alleged in [that state court case].

(3) [Claimants] concede[ ] and agree[ ] the survival act ... has irrevocable priority over the wrongful death loss of society claims.

(4) [Claimants] concede[ ] and agree[ ] that if a judgment is rendered on behalf of the estate of Lawrence McGill [in the state court case filed], or any case based on the fact alleged in [that state court case] in an

---

1. Plaintiff in this case is the defendant in the state court action. Defendants (claimants) in this case are the plaintiffs in the state court action.

2. We are also guided by the Supplemental Rules for Certain Admiralty and Maritime Claims, codified at 28 U.S.C.A.

amount greater than $177,410.00, in no event will the estate seek to enforce excess judgments against GARVEY MARINE, INC. until such time as there has been an adjudication of limitation of liability in the Federal District Court.

## DISCUSSION

■ Jurisdiction is conferred on this court by 28 U.S.C.A. § 1333(1).[3] It states in relevant part:

The district courts shall have *original jurisdiction, exclusive* the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors* in all cases all other remedies to which they are otherwise entitled.

28 U.S.C.A. § 1333(1) (1993) (emphasis added). Therefore, plaintiff has on the one hand a right to adjudicate his exoneration/limitation of liability claim in a federal district court. *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 754 (2d Cir.1988). On the other hand, claimants have a presumed right to a jury trial and common law remedies, as evidenced by the "saving to suitors" clause.[4] This conflict is difficult to reconcile, *Jefferson Barracks Marine Service v. Casey,* 763 F.2d 1007, 1009 (8th Cir.1985) ("The conflict between the Limitation of Liability Act ... and the 'saving to suitors' clause ... has been troublesome for the courts."), but our decision must account for both clauses and give meaning to both, if possible. We begin with the purpose of the Limitation Act.

■ The global purpose of the Limitation Act was "to encourage ship-building and to induce capitalists to invest money in this branch of industry [by] exempting innocent shipowners from liability, beyond the amount of their investment." *Joyce v. Joyce,* 975 F.2d 379, 383–84 (7th Cir.1992) (quoting *Norwich Co. v. Wright,* 80 U.S. (13 Wall.) 104, 121, 20 L.Ed. 585 (1871)); *Dammers & Vanderheide,* 836 F.2d at 754 ("to encourage the development of American merchant shipping") (quoting *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 150, 77 S.Ct. 1269, 1271, 1 L.Ed.2d 1246 (1957)). Thus, protecting vessel owners was paramount. More specific to litigation, the Limitation Act "provide[s] a marshalling of assets [and] the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." *Dammers & Vanderheide,* 836 F.2d at 755 (quoting *In re Moran Transportation Corp.,* 185 F.2d 386, 389 (2d Cir.1950), *cert. denied,* 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951)) (other citations omitted). To effect this purpose the federal court has jurisdiction to "issue a restraining order or an injunction staying all other proceedings against the shipowner arising out of the same mishap" and to "notif[y] all potential claimants to file their claims against the shipowner in admiralty court within a specified period of time." *Complaint of Dammers & Vanderheide,* 836 F.2d at 755. While this aspect of the Limitation Act focuses on the equitable apportionment of limited funds, it assumes in the first instance that the funds are limited. Clearly, the focus of the Limitation Act is on vessel owners and their limited funds. Therefore, we presume the injunction should remain in effect to protect shipowners.

■ Nonetheless, there are two circumstances in which a federal injunction of a state court proceeding would be inappropriate. First, if the limitation fund exceeds the potential liability there is no need to either

---

**3.** *See generally Great Lakes Dredge & Dock Co. v. City of Chicago,* 3 F.3d 225, 230 n. 8 (7th Cir. 1993) ("Because we conclude that 28 U.S.C. § 1331(1) adequately supports the district court's jurisdiction, we do not address [the] contention that the Limitation Act is an independent source of subject matter jurisdiction."), *aff'd sub nom Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* —— U.S. ——, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).

**4.** There is no right to a jury trial in admiralty cases. *See Waring v. Clarke,* 46 U.S. (5 How.) 441, 459, 12 L.Ed. 226 (1847) ("[T]here is no provision, as the constitution originally was, from which it can be inferred that civil causes in admiralty were to be tried by a jury, contrary to what the framers of the constitution knew was the mode of trial of issues of fact in the admiralty. We confess, then, we cannot see how they are to be embraced in the seventh amendment of the constitution, providing that in suits at common law the trial by jury should be preserved."); *Newton v. Shipman,* 718 F.2d 959, 961 (9th Cir. 1983).

safeguard the vessel owner from undue liability or to distribute the funds based on equity (on a pro rata basis), and any state court injunction must be lifted. *See e.g., Lake Tankers Corp. v. Henn,* 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); *Jefferson Barracks,* 763 F.2d at 1009 ("When the aggregate of all multiple claims will not exhaust the available limitation fund, the district court *will not* enjoin the prosecution of claims in other courts.") (emphasis added); *Newton v. Shipman,* 718 F.2d at 962; *Petition of Moran Transp. Corp.,* 185 F.2d 386, 389 (2d Cir.1950), *cert. denied,* 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951). Second, there may be a single claimant whose claims exceed the value of the fund but who stipulates the district court's exclusive jurisdiction to determine any limitation of liability issues. *See e.g., Ex parte Green,* 286 U.S. 437, 438–40, 52 S.Ct. 602, 602–03, 76 L.Ed. 1212 (1932); *Langnes v. Green,* 282 U.S. 531, 541–42, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). The claimants in this case seek a modification of the injunction pursuant to the second recognized exception.

### A. Single Claimant

The McGills' motion to dissolve the stay order is based on the single claim exception to the federal court's exclusive jurisdiction to adjudicate exoneration/limitation actions (mo. to modify ¶ 2). The Eighth Circuit clearly articulated the exception:

> When only one claim has been filed *and nothing appears to suggest the possibility of another claim,* the district court must dissolve its injunction to permit the single claimant to pursue a separate action and jury trial.

*Helena Marine Service, Inc. v. Sioux City & New Orleans Barge Lines, Inc.,* 564 F.2d 15, 18–19 (8th Cir.1977) (emphasis added), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); *Newton v. Shipman,* 718 F.2d at 962; *Jefferson Barracks,* 763 F.2d at 1011 ("[N]ot a 'phantom claimant' but one readily identified and poised in a position to assert at any time a claim that would exceed the limitation fund").

■ In admiralty cases, "a claim for loss of consortium by one spouse is a separate and independent cause of action from the related tort claim of the other spouse." *Dammers & Vanderheide,* 836 F.2d at 756 (citing *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 284–86, 100 S.Ct. 1673, 1678–80, 64 L.Ed.2d 284 (1980)). Paragraph 2 of the claimants' motion to modify the stay order states that the Estate of Lawrence McGill is the sole claimant. However, para. 9 of their claim states that Bettina McGill (decedent's surviving wife), Larry and Mamie McGill (decedent's surviving adult children), and Marcus McGill (decedent's surviving minor child), have been and will be deprived of society, companionship, love, affection and guidance of the decedent. Thus, para. 9 contradicts para. 2. The inconsistency between paras. 2 and 9 of the motion is enough to deprive claimants of the single claim exception.

■ In addition, plaintiff alleges that it knows of facts which indicate that the speed boat which decedent was motoring at the time of the accident had recently undergone repairs and may have malfunctioned. Plaintiff argues that if this is so, then the boat's manufacturer, seller, and repairman may become parties to the action. They could file cross-claims against the plaintiff, seeking indemnification and/or contribution. The Second Circuit has clearly held that such a situation is one of multiple claims:

> As long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a *concursus.*

*Dammers & Vanderheide,* 836 F.2d at 757 (relying on *W.E. Hedger Transportation Corp. v. Gallotta,* 145 F.2d 870, 872 (2d Cir. 1944) (dictum) (L. Hand, J.)); *S & E Shipping,* 678 F.2d at 646–49 (Kennedy, concurring). The Sixth and Eighth Circuits, on the other hand, have held that indemnification claims are merely derivative of the claimant's claim and must therefore be treated as part of the original claim. *Universal Towing Co. v. Barrale,* 595 F.2d 414, 419 (8th Cir.1979) ("[A]n indemnity claim does not by itself create a multiple-claim situation."); *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.,*

678 F.2d 636, 645 (6th Cir.1982). We find the reasoning of the Second Circuit more persuasive and hold that the potential indemnification claims are neither phantom nor derivative and that therefore a multiple claims potential remains.

To understand how the potential third party claims are derivative of the claimant's claims against the third party (thus multiple) and not derivative of the claimant's claims against the shipowner (thus single), suppose the stipulated value of the vessel and tow is $150,000.[5] Suppose further that the claimants win a judgment against the third party in the amount of $1,000,000 and that the third party wins a judgment for contribution from the shipowner for anything it must pay the claimants over one-half of the judgment. Thus, the shipowner must pay $150,000 to the claimant. The third party must pay the claimants the remaining $850,000 (i.e., $1,000,000—$150,000) but then proceeds against the shipowner for $350,000 (i.e., $850,000—$500,000). If the shipowner pays the third party (which we assume it must because the third party has not stipulated the shipowner's right to litigate the limits of his liability in admiralty court, nor has it conceded that the judgment it receives in state court will not be *res judicata* in any admiralty proceedings for contribution), the shipowner has paid a total of $500,000—the very situation that the Limitation Act was meant to prevent. Thus, since the third party's claims are dependent upon the claimant's claims against the third party and not the claimant's claims against the shipowner, the claims for indemnification and contribution are separate and thus multiple.

Moreover, the manufacturer, seller and repairman might assert a claim for attorney's fees and costs, which when coupled with claims for indemnification and/or contribution both the Second, Sixth and Eighth Circuits have held present multiple claims. *Complaint of Dammers & Vanderheide*, 836 F.2d at 756 (2d Cir.); *Helena Marine Service, Inc.*, 564 F.2d at 18–19 (8th Cir.); *Universal Towing Co.*, 595 F.2d at 419 (8th Cir.); *S &*

E Shipping Corp. v. Chesapeake & O. Rwy Co., 678 F.2d 636, 645 (6th Cir.1982). Plaintiff also argues that decedent's motorboat may have been damaged, allowing for a claim of injury to personal property. Finally, plaintiff argues that if decedent carried life insurance the company might have a subrogation claim against plaintiff.

Thus we can conceive of "a potential set of circumstances" where multiple claims are presented. That these other claims have not yet been filed does not preclude our considering them when deciding whether to dissolve the stay order. *Helena Marine Service, Inc.*, 564 F.2d at 18 ("In determining whether to dissolve the stay of other proceedings, however, a court should not merely consider claims that have been filed"). Even if the requisite period for filing these other claims has passed, we may still consider them. *Id.* at 19 ("Timely filing of claims in the limitation proceeding is not jurisdictional; courts have entertained claims that were not timely filed") (citations omitted); *Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 362 (5th Cir.1963) ("[S]o long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to file late claims ... upon a showing of the reasons therefor") (internal quotation and citation omitted); *Meyer v. New England Fish Co. of Oregon*, 136 F.2d 315, 316 (9th Cir.), *cert. denied*, 320 U.S. 771, 64 S.Ct. 83, 88 L.Ed. 461 (1943).

The fact that the claim period has now passed does not influence the single multiple-claim analysis. It does, however, influence the types of stipulations that a multiple-claim inadequate-fund claimant must (and can) make to proceed in another forum. *See infra.*

**B. Multiple Claims and Stipulations**

 The multiplicity of claims will not bar dissolution of the stay order if the claimants, by their stipulations, transform the multiple claims into a single claim for purposes of the exception. *See Dammers &*

---

5. The example and the reasoning is taken from Judge Kennedy's concurring opinion in *S & E*

*Shipping*, 678 F.2d at 646–49.

*Vanderheide,* 836 F.2d at 757–58; *S & E Shipping Corp. v. Chesapeake & O Ry. Co.,* 678 F.2d 636, 641 & 644 (6th Cir.1982); *Petition of Moran Transp. Corp.,* 185 F.2d 386, 388 (2d Cir.1950), *cert. denied,* 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951) (single claim exception applies to multiple claims if claimant "file[s] the priority consent"). There is a four-part test used to determine if the multiple claims can be reduced to a single claim for purposes of the single claim exception. A claimant must

> a) file his claim in the limitation proceeding;

> b) where a stipulation for value has been filed in lieu of the transfer of the ship to a trustee, concede the sufficiency in amount of the stipulation;

> c) consent to waive any claim of *res judicata* relevant to the issue of limited liability based on any judgment obtained in the state court;

> d) concede petitioner shipowner's right to litigate all issues relating to limitation in the limitation proceeding.

*Dammers & Vanderheide,* 836 F.2d at 757–58; *Jefferson Barracks Marine Service, Inc. v. Casey,* 763 F.2d 1007, 1010 & n. 1 (8th Cir.1985).[6] In addition, claimants must protect plaintiff "from the prospect of excess liability at the hands of third parties," *Id.* at 758, which includes prioritizing the various claims, *Id.* at 756.

The claimants clearly meet the requirements in (a), (c) and (d). The claim was filed in federal court. Paragraphs (1) and (4) of claimants' stipulations speaks to the federal court's exclusive jurisdiction (requirement (d)), and para. (2) speaks to the *res judicata* issue (requirement (c)). Two issues remain. First, must the claimants agree to the plaintiff's stipulation of value and, if so, have they made such a concession? Second, have claimants made the appropriate prioritizations of the multiple claims?

**1. *Stipulated Value of the Vessel and Tow***

 Claimants have not agreed to the stipulated value of the vessel and its cargo, and we hold that they need not. First, Supp. Rule F(7) states that '[a]ny claimant may by motion demand that the fund deposited in court or the security given by the plaintiff be increased on the ground that they are less than the value of plaintiff's interest in the vessel and pending freight." We think this presupposes the claimants' right to challenge the sufficiency of the shipowner's stipulation. Second, the Supreme Court has provided "that *if* the value of the vessel be not accepted as the limit of the owner's liability, the federal court is authorized to *resume* jurisdiction and dispose of the whole case." *Ex Parte Green,* 286 U.S. 437, 440, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932) (emphasis added). The Court clearly has contemplated a situation where the claimant has not conceded the value of the vessel and tow, but the state court is still competent to decide the issue of liability. Third, the Ninth and Second Circuits have held that claimants need not stipulate the value of the vessel, only the district court's right to determine the limit of the liability.[7] *Anderson v. Nadon,* 360 F.2d 53, 58 n. 8 (9th Cir.1966); *Petition of Red Barge Line,* 160 F.2d 436 (2d Cir.), *cert. denied,* 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947) (need not concede the right to limited liability, only concede the right to litigate the right to limited liability). The only case from the Court of Appeals that is cited in support of requirement (b) is *Jefferson Barracks,* 763 F.2d 1007, 1010 (8th Cir.1985), and we find that case inapposite. In *Jefferson Barracks* the claimants "stipulated that the amount of any recovery would be limited to the amount remaining in the limitation fund, and that the U.S. District Court would retain jurisdiction of all limitation issues." *Id.* at 1008. Thus, the claimants in that case were willing to stipulate the value of the vessel—the court was not forced to hold that the claimants

---

6. The Second Circuit in *Dammers & Vanderheide,* however, reserved judgment as to whether the second requirement was necessary. *Dammers & Vanderheide,* 836 F.2d at 758 n. 7.

7. There are district court opinions that also follow this rule. *See, e.g., Kattelman v. Otis Engineering Corp.,* 701 F.Supp. 560, 562 (E.D.La. 1988); *In re North Lubec Manufacturing and Canning Co.,* 640 F.Supp. 636, 640–41 & n. 6 (D.Me.1986).

were so required. Finally, this court's order approving plaintiff's stipulation as to the value of his vessel was "without prejudice to the due appraisal of the plaintiff's said interest under order of this court, and that any party may have leave to apply to have the amount of the same security for value increased or diminished as the court may direct...." (order of June 21, 1995 at 2). It would be inane to force the claimants to concede the shipowner's valuation of his vessel when this court has clearly left open its valuation upon "due appraisal." Therefore, claimants are not required to stipulate the value of the vessel, only the plaintiff's right to litigate the valuation of the vessel in federal court.

### 2. Prioritizations

To have the injunction lifted claimants must also protect plaintiffs from liability to third parties. In a multiple claim situation as the one here, claimants must stipulate the priority of the various claims. Claimant's stipulation (3) that the survival act claim takes precedence over the wrongful death claims is sufficient to protect the plaintiff. Even though there are no prioritizations regarding the potential claims for indemnification, attorney's fees and costs, injury to personal property and subrogation, this is not fatal to claimants' motion. It would be impossible for claimants to prioritize their claims against others, when there are no other claims. As we have previously noted, there are potential other claims, but we also note that the accident was more than two years ago. We see no reason to deny the claimants their other remedies because of something that might happen, but very well may not, if the vessel owner can be otherwise protected. We agree with the procedure followed in *Dammers & Vanderheide, supra:* continuing the stay against entry of judgment and consequent enforcement of any recovery achieved in any state court proceeding pending the outcome of this limitation proceeding. In the event that other claims are filed, we retain jurisdiction over the liability issue and will demand proper prioritizations, if necessary, or reinstate the injunction.

8. Plaintiff makes a transactional-costs argument.

### C. Judicial Economy

Finally, plaintiff argues that notions of judicial economy counsel against dissolution of the stay order. Other such policy-based arguments have been made and rejected. The shipowner in *Jefferson Barracks* argued against the dissolution of its injunction by arguing that to do so would deprive him of the use of Fed.R. of Civ.P. 14(c). The Second and Eighth Circuits rejected this argument because the claimants' right to sue under the "saving to suitors" clause could "hardly be abrogated by a federal procedural rule." *Dammers & Vanderheide,* 836 F.2d at 760; *Jefferson Barracks,* 763 F.2d at 1011. In this case plaintiff's economics [8] are correct, but economics cannot trump the law. The saving-to-suitors clause is an act of Congress which, if it cannot be negated by a procedural rule (even one promulgated by the Supreme Court), it certainly cannot be negated by a call to preserve scarce resources which is based purely in judicially-created policy.

### CONCLUSION

For the reasons set forth above, claimants' motion to lift the injunction is granted, except that we continue the stay against entry of judgment and consequent enforcement of any recovery achieved in any state court proceeding pending the outcome of this limitation proceeding.